**UNITED STATES v. HEITNER et al.**
No. 160.

Circuit Court of Appeals, Second Circuit.
May 2, 1945.

Louis Halle, of New York City, for appellant Heitner.

Archibald Palmer, of New York City, for appellant Cryne.

Mario Pittoni and T. Vincent Quinn, U. S. Atty., both of Brooklyn, N. Y. (Vine H. Smith and Herbert I. Sorin, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for appellee.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Heitner and Cryne appeal from a judgment of conviction for possessing and operating an unlawful still, and for conspiracy to do so. The chief witness was an accomplice, one Meierdiercks, who turned state's evidence, and made out a case against them which if believed, left no doubt of their guilt. This testimony was in part corroborated by that of two policemen of New York City and by other witnesses whom we need not mention. The principal question raised by Heitner is of the sufficiency of the testimony to support a verdict; and we must confess ourselves

unable to understand how even a plausible argument can be made except upon the theory that the jury should not have accepted the testimony of the accomplice, Meierdiercks. That argument we shall not pause to answer. Heitner's other complaint is of the admission against him of a paper found in his pocket at his arrest which bore the telephone number of a prune pitter. The still was being used to make a liquor out of prune juice; and there was ground to infer from Heitner's carrying about such a telephone address that he wished to make use of the prune pitter to pit the prunes whose juice he distilled. As to its competency, it has long been established that the person of one lawfully arrested may be searched, and that anything found may be used against him. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L. Ed. 145, 51 A.L.R. 409. Heitner appears to confuse this doctrine with that which forbids such a search to extend generally to the premises in which the arrest is made. United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775.

■ Cryne's appeal raises several other questions, arising out of an admission made by him after his arrest on January 20, 1942, to one of the policemen while he was being taken to the police station. He complains that this was incompetent because he had not yet been arraigned; because the arrest which preceded it was unlawful; and because he was not cautioned that he need not answer. As to the first objection, although it does not indeed appear that after his arrest Cryne was arraigned at all except to plead to the indictment on May 11, 1942, on the other hand, it also does not appear that he was kept in custody meanwhile. Hence there is no basis in the record for supposing that his arrest was unlawfully prolonged; and, indeed, even if there were, there is not the slightest ground to think that the admission, made almost at once upon his arrest, was in any degree extracted by coercion and was not voluntary. Upon any hypothesis the situation was therefore within United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, and not within McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608,

87 L.Ed. 819. On the other hand, it is a reasonable—indeed an inevitable—inference that the admission resulted from the arrest in the sense that Cryne would not have answered, had he not been in custody. For that reason the lawfulness of the arrest becomes relevant. The facts were as follows.

The two policemen were in "plain clothes" and received orders from their "Precinct," or headquarters, to go in a motorcar to a building, in which, as it later turned out, a still was installed, although it does not appear, except by inference, what they were told at the "Precinct." They waited outside the building to which they had been directed, and two men came out, who were unknown to the officers, but were in fact Meierdiercks and Cryne. These men entered a motorcar standing in front of the building, and drove off; and the policemen followed in their own car. After they had followed for a short distance they gave up and tried to telephone one, Brady, an employee of the Federal Alcohol Tax Bureau: failing to reach him, they went back to the building and shortly thereafter the car with Meierdiercks and Cryne in it came back. To the policemen it seemed that the men in that car "looked us over," and in any event they almost at once turned about and made off at a high rate of speed. The policemen chased them for some distance at a speed of at times over sixty miles an hour, finally overhauled them, stopped them at the point of a pistol, and arrested both. Shortly thereafter a key dropped from Cryne's pocket which was found to fit the door of the building. On the way to the police station, in reply to a question of the policeman who had him in custody: "What have you got in this house?", Cryne answered: "I will tell you, we have a small still there, two hundred and twenty-five gallons."

■ It is well settled that an arrest may be made upon hearsay evidence;[1] and indeed, the "reasonable cause" necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties. It

---

[1] Carroll v. United States, 267 U.S. 132, 160, 161, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L. Ed. 1032; Husty v. United States, 282 U.S. 694, 700, 701, 51 S.Ct. 240, 75 L. Ed. 629, 74 A.L.R. 1407; Wisniewski v. United States, 6 Cir., 47 F.2d 825; Strom v. United States, 9 Cir., 50 F.2d 547; Somer v. United States, 2 Cir., 138 F.2d 790 (semble); One Truck v. United States, 6 Cir., 140 F.2d 255.

is true that, when they act upon information, it is proper to compel them to disclose its source—subject to some limitations—since otherwise there is no way to test whether they have had "reasonable cause" for the arrest. In Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L. Ed. 151, for example, the trial court had ruled out some questions designed to learn the sources of the information on which the officers had acted; and the court, recognizing the propriety of the inquiry, felt called upon to justify the arrest upon the ground that it had not depended, or at least need not have depended, "upon the credibility of something told but upon what they saw and heard—what took place in their presence." In this there is no intimation that "something told" could not have furnished "reasonable cause" for the arrest; indeed, the implication was rather the contrary. In the case at bar the policemen were not asked what was the information they had received at the "Precinct." Had that been done, it might have appeared that they did not have enough to go on; but, as the record stands, it is proper to infer that what they there heard related to the unlawful use of the building for the making or storing of alcohol, else they would not have tried to make contact with Brady as they did. The information which we infer they then got, coupled with the observed conduct of Meierdiercks and Cryne, gave them "reasonable cause" to make the arrest. It is true that there was nothing suspicious in the fact that these two entered a car outside the building, or that they returned after the policemen came back; but what then occurred was ample confirmation of the information which they already had. It will be remembered that the two suspects then appeared to the policemen to "look us over" and almost at once turned about and made off at such a burst of speed, as could have left no doubt in any reasonable mind that they were trying to escape arrest, and that they feared to be connected with what might be found in the building. It has long been recognized that flight, like the spoliation of papers, is a legitimate ground for the inference of guilt;[2] although in three decisions rendered fifty years ago the Supreme Court declared that it was error to charge a jury that they might "presume" guilt from flight.[3] The distinction is not altogether self-evident, and it is perhaps permissible to question whether it would still hold; "these cases, on the point of presumption, are ill-advised." Wigmore § 276, note 3. Be that as it may, it has at no time been doubted that flight is a circumstance from which a court or an officer may infer what everyone in daily life inevitably would infer.

Finally, as to the objection that, when the policeman asked what Cryne had in the building, he did not tell Cryne that the answer might be used against him, we need add nothing to what we said in United States v. Block, 2 Cir., 88 F.2d 618. However commendable it may be, even as a preface to such a casual inquiry as that here at bar, so to caution an accused, in the end the question is always whether the answer was "voluntary." This objection is really only a part of what is covered by United States v. Mitchell, supra, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140. The situation in Wood v. United States, 75 U.S.App.D.C. 274, 128 F.2d 265, 141 A.L. R. 1318 was altogether different.

Judgment affirmed.

---

[2] Allen v. United States, 164 U.S. 492, 498, 499, 17 S.Ct. 154, 41 L.Ed. 528; Bird v. United States, 187 U.S. 118, 131, 23 S.Ct. 42, 47 L.Ed. 100; Rowan v. United States, 7 Cir., 277 F. 777, 25 A.L.R. 876; Kanner v. United States, 7 Cir., 34 F.2d 863, 866; Strom v. United States, supra, 9 Cir., 50 F.2d 547; Curreri v. Vice, 9 Cir., 77 F.2d 130, 133; United States v. Dalhover, 7 Cir., 96 F.2d 355, 359; Wigmore, § 276.

[3] Hickory v. United States, 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474; Alberty v. United States, 162 U.S. 499, 502, 16 S.Ct. 864, 40 L.Ed. 1051; Starr v. United States, 164 U.S. 627, 632, 17 S.Ct. 223, 41 L.Ed. 577.