## UNITED STATES v. LI FAT TONG.
### No. 119.

Circuit Court of Appeals, Second Circuit.
Dec. 28, 1945.

Paul O'Dwyer, of New York City, for appellant.

T. Vincent Quinn, U. S. Atty., of Brooklyn, N. Y. (Vine H. Smith, Hyman H. Goldstein, and Mario Pittoni, Asst. U. S. Attys., all of Brooklyn, N. Y., of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On July 9, 1944, the defendant, Li Fat Tong, was arrested by a United States Narcotic Agent named Ryan and his baggage searched at La Guardia Air Field in the

Borough of Queens. As a result his bags were found to contain 20 tins of smoking opium and a bottle containing Yen Shee wine, a derivative of opium. No search warrant had been issued. The defendant was indicted in October, 1944, for facilitating the transportation and concealment of smoking opium and was convicted after trial. He has appealed from the judgment of conviction on the ground that the arrest and search were unlawful for lack of probable cause, that no competent evidence of the crime charged was adduced, that evidence in his favor was improperly excluded, and also that error was committed in refusing to suppress the use as evidence of the opium found in his possession. After the arrest and the search and seizure of the baggage containing the 20 tins of smoking opium and the bottle of Yen Shee wine, the defendant moved for an order to suppress the use of the merchandise as evidence on the ground that it had been obtained illegally, but the motion was denied.

On the motion to suppress, Daniel A. Belmont, a narcotic agent in charge of the office at Newark, N. J., testified that he was informed by six prisoners whom he interrogated at Newark about June 13, 1944, that the defendant brought narcotics into Newark and by another reliable man, who was not a prisoner, that the defendant was then on a trip to San Francisco and would return with a large supply of narcotics. Belmont also said that when he heard that the defendant was going to make the trip to San Francisco he kept in touch with his source of information and forwarded to New York memoranda containing his information and that the New York office kept in contact with the Chicago agent who notified New York that the defendant had landed in Chicago and that his plane was coming to New York. The judge refused to require Belmont to give the names of his informants.

Ryan, the narcotic agent at the New York office in charge of detecting the defendant's activities there, testified that on the evening of July 8, 1944, he received information from the agents in Chicago that defendant and another Chinaman named Fong Dick Lee were planning to leave there by plane and were due to arrive at LaGuardia Field at 8:30 the next morning. Prior to that time the New York narcotic agency had received Belmont's original memorandum that the latter had received reliable information, without disclosing the source, that the defendant was a contact man for various opium rings. Ryan sent a copy of this memorandum to the Chicago narcotic agency. He also found that the defendant had been arrested twice in the past on narcotic as well as on other criminal charges. On the evening of July 8, 1944, Ryan was told by Belmont that the defendant and Lee had narcotics in their possession and were bringing them to New York. When the defendant and Lee arrived at LaGuardia Field on the morning of July 9th, Ryan (who was accompanied by another narcotic agent named Bruch) showed them their official credentials, told the defendant they were narcotic officers, asked him for his draft card and requested Tong and Lee to step over to the government car where they could talk without interference. As the defendant proceeded to do this he dropped a one-ounce bottle which, as he admitted to Ryan, contained traces of Yen Shee Suey—a mixture of smoking opium and wine. Ryan was able to corroborate from the smell of the bottle what it had contained. The defendant told Ryan that he had emptied this bottle just before he left the plane and that he had a little more Yen Shee Suey in his bag. Ryan then told him that he was under arrest. The defendant then informed Ryan that he had gone out to the coast to purchase narcotics for which he had paid $4,000. Ryan asked him where his baggage was and was handed the baggage checks. When the baggage was produced it was searched and in one bag a half pint whiskey bottle containing a little Yen Shee Suey was found and in a shoe box 20 tins of opium.

Thereafter the case was brought to trial, which the defendant and his attorney asked to be had before the court without a jury. At the trial Ryan testified that he had been advised that the defendant was to arrive on a plane and had narcotics in his possession. He then reiterated the testimony about his dealings with the defendant at the airport, which he had given at the hearing of the motion to suppress, about the dropping of the bottle containing traces of Yen Shee Suey, the admission of the defendant that he had more Yen Shee Suey in his baggage, the placing of him under arrest, the search of his baggage and the seizure of the two bot-

tles and the 20 cans of smoking opium, and the defendant's admission that he had purchased the narcotics in San Francisco for $4,000 and brought them with him to New York. The seized contraband was identified at the trial both by Ryan and Bruch and was shown by a chemical analysis to contain smoking opium.

■ The arrest whether it consisted in the requirement that the defendant step aside when he left the plane, so that conversation with him would not be interrupted, or in the statement to him by Ryan, after he dropped the bottle, that he was under arrest, was made with probable cause. But it is contended that it was unlawful because based upon hearsay evidence obtained from the Chicago office and through various informers whose names were not divulged. We recently held, however, in United States v. Heitner, 2 Cir., 149 F.2d 105, 106, that an arrest may be made upon hearsay evidence, and cited as authority the ruling in Carroll v. United States, 267 U.S. 132, 160, 161, 45 S.Ct. 280, 69 L.Ed. 543, 39 A. L.R. 790, Dumbra v. United States, 268 U. S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032, and Husty v. United States, 282 U.S. 694, 700, 701, 51 S.Ct. 240, 75 L.Ed. 629, 74 A. L.R. 1407.

The evidence here seems to us to have been very strong and to have been entirely sufficient to establish probable cause for the arrest. The search and seizure of the baggage containing the contraband was a lawful consequence of such an arrest. Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 287, Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652.

■ It is argued that the arrest was made not only upon hearsay evidence but upon evidence derived through informers whose identity the court declined to require the government to disclose and that such an arrest was made without probable cause. Any suggestion that the evidence on which probable cause rested was derived wholly from unidentified informers, even if that fact be regarded as critical, is not borne out by the record. At the hearing of the motion to suppress, Ryan testified that he was told by the narcotic agents in Chicago that the defendant was there and was planning to leave by plane on the evening of July 8, 1944, and would arrive at LaGuardia Field at 8:30 on the morning of July 9. This proof, though based upon hearsay, was not from an informer.

It is true that it was from the narcotic agent Belmont, who received the information from an unidentified informer, that Ryan first positively learned that the defendant was carrying smoking opium with him on his trip from Chicago to New York. There is no reason to suppose that hearsay evidence derived from an informer is not as competent evidence on which to show probable cause for an arrest as any other proof. The weight to be given it is a matter for the sound discretion of the court which was exercised on the motion to suppress. We hold there was no error in declining to compel the disclosure of the names of informers. For many years it has been settled law that a government official cannot be compelled to disclose the identity of an informer unless it appears upon the trial that the disclosure of the informer's name is necessary or desirable to show the prisoner's innocence. Wigmore on Evidence, 3d Ed. § 2374; Scher v. United States, 305 U.S. 251, 253, 59 S.Ct. 174, 83 L.Ed. 151; Marks v. Beyfus, L.R. 25 Q.B.D.498; Worthington v. Scribner, 109 Mass. 487, 12 Am.St.Rep. 736. We can see no reason for greater strictness than was observed at the hearing of the motion to suppress in determining the quantum of evidence necessary to justify the arrest. We cannot see that the proof at the trial would have tended to establish innocence if the names of the informers had been given for it is not disputed that the defendant was carrying narcotics. This fact alone furnished prima facie evidence of guilt and left him with the burden of coming forward with proof that he possessed the narcotics lawfully. Yee Hen v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; United States v. Moe Liss, 2 Cir., 105 F.2d 144, 146. The knowledge of the names of the informers would not seem to furnish any support to such a defense.

The defendant excepted to a ruling of the judge at the hearing of the motion to suppress that it was inadmissible to ask the narcotic agent Ryan whether he went out to LaGuardia Field for the purpose of arresting the defendant. It is hard to see how the question if answered in the affirmative could have served the defense, nor can we see why it was objected to. That arrest was the purpose seems to have been shown by the proof which we have already said furnished probable cause for the arrest.

The rules we have mentioned justified the arrest of the defendant, the search of his baggage, the seizure of the narcotics discovered in it, and the denial of the motion to suppress. The evidence adduced at the trial amply supported the judgment of conviction. For these reasons the judgment should be affirmed.

Judgment affirmed.