UNITED STATES v. NICHOLS.
No. 313.

District Court, W. D. Arkansas,
Hot Springs Division.

July 6, 1948.

R. S. Wilson, U. S. Atty., and David R. Boatright, Asst. U. S. Atty., both of Fort Smith, Ark., for plaintiff.

C. Floyd Huff, Jr., of Hot Springs, Ark., for defendant.

JOHN E. MILLER, District Judge.

An indictment containing two counts was returned by the Grand Jury against the defendant, James Frank Nichols, on May 25, 1948. Count 1 charges a violation of Section 2803, Title 26 U.S.C.A.Int.Rev.Code, in that on or about January 15, 1948, in a 1936 Plymouth sedan the defendant had in his possession and custody 30 one gallon jugs of distilled spirits, upon which no stamps were affixed denoting the quantity thereof and evidencing payment of all internal revenue taxes imposed by the United States. Count 2 charges a violation of Section 3321, Title 26 U.S.C.A.Int.Rev.Code, in that on or about January 15, 1948, the defendant removed and concealed 30 one gallon glass jugs of nontaxpaid distilled spirits for and in respect whereof a Federal Tax had been imposed with intent to defraud the United States of such tax.

On June 8, 1948, the defendant filed a motion to suppress evidence, alleging that Federal Agents, in violation of defendant's rights under the 4th and 5th Amendments to the Federal Constitution, unlawfully searched his automobile without a search warrant and without probable cause, and found therein the 30 one gallon glass jugs of distilled spirits, which evidence will be used against the defendant on the trial of this cause unless suppressed in accordance with defendant's motion.

This motion came on for a hearing before the court on June 22, 1948, at which hearing the following facts developed:

About 2:30 P.M., Thursday, January 15, 1948, at Arkadelphia, Arkansas, Elwin S. Gibson and Ralph W. Keck, agents of the Alcoholic Tax Unit, Treasury Department, obtained information from a source which they deemed reliable that the defendant often delivered untaxpaid distilled spirits from the vicinity of Hot Springs, Arkansas, to Arkadelphia, Arkansas, usually on Thursday of each week, and that if they wanted to be certain of picking him up, they should intercept him before he reached Arkadelphia, because he made deliveries at unknown places within that city. Both agents not only knew the defendant personally but knew him to be a habitual or chronic violator of the Internal Revenue Laws since 1919, and that he had served several terms in prison for such violations. The information was that he would be driving alone in a 1936 Plymouth Sedan bearing State License Number 111,718 with the liquor hidden in the car. Acting upon this information the agents immediately began patrolling the highway between Hot Springs and Arkadelphia, and about 5 o'clock that afternoon the defendant, driving toward Arkadelphia, met them. The agents, who were then going toward Hot Springs, turned around and after following the defendant for a short distance drove alongside of him and ordered him to stop. While overtaking the defendant Agent Gibson observed that although the defendant was alone the automobile sagged in the back as though loaded. After both cars had stopped Agent Keck entered defendant's car and found the 30 one gallon jugs behind the back of the rear seat, whereupon the liquor was seized and the defendant placed under arrest.

The agents did not have a search warrant, but the Government seeks to justify the seizure and arrest on the ground that they had probable cause for the search. During the hearing on this question the attorney for the defendant asked Mr. Gibson, one of the agents, to name his informer. The Government interposed an objection, and for purposes of the record the objection was sustained, but the court at the conclusion of the hearing stated that that question along with the question of probable cause would be taken under consideration and a final decision thereon rendered at a later date.

The facts developed at the hearing also call for a consideration by the court of the question whether, under the circumstances, the agents should have obtained a search warrant. The detailed information obtain-

ed from the informer was considered by them to be reliable, and, therefore, should the agents have applied for a search warrant to seek out and search the automobile and thus disclose the source of their information or were they authorized to act and search the automobile when they met the defendant driving the identical vehicle that the informer advised them he would be driving?

In cases of this kind when it is reasonably practicable to obtain a search warrant the same must be used in every case, but from the very nature of an automobile believed to be carrying contraband liquor, it is a rare case indeed when the facts render it reasonably practicable to secure a search warrant. Therefore, at least since the Supreme Court decision in Carroll et al. v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, it has been generally held by the various Federal Courts than an automobile may be searched for contraband liquor in the absence of a search warrant when the officers act upon probable cause. As stated by the court in the Carroll case, supra, in 267 U.S. at page 156, 45 S.Ct. at page 286, 69 L.Ed. 543, 39 A.L.R. 790:

"In cases where the securing of a warrant is reasonably practicable, it must be used, and when properly supported by affidavit and issued after judicial approval protects the seizing officer against a suit for damages. In cases where seizure is impossible except without warrant, the seizing officer acts unlawfully and at his peril unless he can show the court probable cause."

From the viewpoint of effective law enforcement consistent with a full and adequate protection of the individual's rights guaranteed him by the constitution, the reasons for the doctrine permitting search of an automobile upon probable cause are obvious. Because of the highly movable nature of an automobile, to require a search warrant in every instance would in many cases place an insurmountable obstacle in the path of enforcement officers. Chief Justice Taft in writing the opinion of the court in the Carroll case recognized this and on page 153 of 267 U.S., on page 285 of 45 S.Ct., 69 L.Ed. 543, 39 A.L.R. 790, stated:

"We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

Of course, the Carroll case is actual authority for a case arising under the National Prohibition Act, 27 U.S.C.A. § 1 et seq., only, because the search there was upheld under the search and seizure provisions enacted for the enforcement of that Act. This was pointed out by the Supreme Court in United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, in which the court stated that the Carroll case did not establish a doctrine that, without such legislation (above referred to), automobiles are subject to search without warrant in enforcement of all federal statutes, and since it was not necessary in the Di Re case, the court declined to pass on the proposition that any automobile is subject to search without warrant on reasonable cause to believe it contains contraband. However, the language of the Carroll case recognized and made a difference between an automobile or similar vehicle and a permanent dwelling, and the court believes the reasoning behind this language is sound. The distinction made is a material and substantial one.

In any event it apparently cannot be disputed that an automobile may be searched upon probable cause in a case with facts such as the one now before the court. The case of Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151, is direct authority for the proposition, since involved there was an alleged violation of Section 2803, Title 26 U.S.C.A.Int.Rev.Code, which is the identical section of the code upon which Count 1 of the indictment against defendant Nichols is based, and the Supreme Court in the Scher Case sustained a

search without a warrant because made upon probable cause. See, also: United States v. One 1946 Plymouth Sedan Automobile, 7 Cir., 167 F.2d 3.

In the instant case the agents were justified, after receiving the "tip", in immediately proceeding onto the highway in an effort to intercept Nichols, and under the circumstances that existed it was neither reasonably practicable nor necessary for them to delay and endeavor to obtain a search warrant, even assuming that they could have presented to a magistrate the requisite probable cause for its issuance without revealing the identity of their informer. A like conclusion was reached in Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 242, 75 L.Ed. 629, 74 A.L.R. 1407, a case with similar facts, wherein the court rejected a contention that a search warrant should have been obtained because the officers had sufficient time after receipt of information from an informer and the search of the car to have obtained a warrant. In so doing the court said:

"The search was not unreasonable, because, as petitioners argue, sufficient time elapsed between the receipt by the officer of the information and the search of the car to have enabled him to procure a search warrant. He could not know when Husty would come to the car or how soon it would be removed. In such circumstances, we do not think the officers should be required to speculate upon the chances of successfully carrying out the search, after the delay and withdrawal from the scene of one or more officers which would have been necessary to procure a warrant. The search was therefore on probable cause, and not unreasonable; and the motion to suppress the evidence was rightly denied."

The question remains then, from the facts heretofore set forth, was there probable cause for the search of this defendant's automobile?

■ An attempt to set down the requisite elements of probable cause as a general proposition is neither necessary nor desirable, and in determining whether there is probable cause each case must rest upon its own facts. It is not necessary that the officer have legal evidence of the suspected violations, but "it is enough if the apparent facts which have come to his attention are sufficient, in the circumstances, to lead a reasonably discreet and prudent man to believe that liquor is illegally possessed in the automobile to be searched", Husty v. United States, supra.

In the instant case the Federal Agents received information from a source believed reliable that Nichols was delivering untaxpaid distilled spirits into Arkadelphia in a particularly described automobile; Nichols was known by the agents to be a habitual violator of the Internal Revenue Laws; the automobile was intercepted on the highway leading into Arkadelphia; and the agents observed that the rear of the car was sagging as though carrying a load of some sort.

■ These facts, considered together, furnished reasonable grounds for the agent's belief that Nichols was hauling distilled spirits in violation of the Internal Revenue Laws. Therefore, since there existed probable cause, the search was valid.

It is contended by the learned and diligent attorney for the defendant that the principal ground upon which probable cause rests in this case is the information or "tip" received by the agents. In other words, absent the "tip" probable cause did not exist. Without deciding the point, it may be said that there is authority in support of that conclusion. For instance in Pearson v. United States, 10 Cir., 150 F.2d 219 the officers saw two men come out of a liquor store in Fort Smith, Arkansas, one of which was recognized as a bootlegger, get into a car with Oklahoma license plates, and drive into Oklahoma, a dry State. The court in reversing the lower court, held that there did not exist probable cause for the search of the car by the officers and that the motion to suppress the evidence should have been sustained. In that case (as would be the instant case but for the information or "tip") the principal fact that motivated the search was the knowledge that one of the men had a record as a bootlegger. To justify the search in such a case would be allowing suspicion to constitute probable cause, and clearly this should not be, for to

allow officers to stop citizens traveling upon the highways and to search their cars upon suspicion merely as distinguished from facts justifying a reasonable belief would certainly be an unwarranted invasion of the rights guaranteed the individual by the 4th Amendment. See, also: Brinegar v. United States, 10 Cir., 165 F.2d 512.

Continuing, the defendant argues that since the backbone of the probable cause is the "tip", he is entitled to have the informer identified, in order that he may show, if possible, that the informer was unreliable or unworthy of belief, and if successful in this regard, he contends that the officers would not be justified in relying upon the "tip", and therefore would not have probable cause for the search.

The general view on the question raised by the defendant is that as a matter of public policy an informer's identity should not be disclosed unless essential to the accused's defense. This view was adopted by the Supreme Court in Scher v. United States, supra, 305 U.S. on page 254, 59 S.Ct. on page 176, 83 L.Ed. 151, the court stating:

"Moreover, as often pointed out, public policy forbids disclosure of an informer's identity unless essential to the defense as for example where this turns upon an officer's good faith."

And even though this statement from the Scher case is probably dictum merely, since the court sustained the search on probable cause obtained by the officers from what they saw and heard rather than from something told them, it represents a sound statement of what this court conceives to be the law. Most cases may be so disposed of because normally the officers use the information to obtain their probable cause, and the search is justified by the probable cause based upon what they saw and heard as a result of having the information and not upon the information itself, but certainly that need not be the case, and probable cause may be based, at least in part, upon the information itself.

Herein the defendant did not allege that it was his belief that the officer was testifying falsely as to having received the information, or that a disclosure of the informer's identity was essential to his defense on the merits of the case, as necessary or desirable to show his innocence of the charge against him. For cases following the view that disclosure should not be had, see: Segurola et al. v. United States, 1 Cir., 16 F.2d 563; Shore et al. v. United States, 60 App.D.C. 137, 49 F.2d 519; McInes v. United States, 9 Cir., 62 F.2d 180; United States v. Li Fat Tong, 2 Cir., 152 F.2d 650; and Cannon et al. v. United States, 5 Cir., 158 F.2d 952.

It should be stated that there is authority to support defendant's contention. See: United States v. Keown, D.C.W.D.Ky., 19 F.Supp. 639; United States v. Blich, D.C. Wyo., 45 F.2d 627. See, also: Dissenting opinion in Segurola et al. v. United States, supra; and United States v. Heitner et al., 2 Cir., 149 F.2d 105, at pages 106, 107 in which the court said:

"It is true that, when they act upon information, it is proper to compel them to disclose its source—subject to some limitations—since otherwise there is no way to test whether they have had 'reasonable cause' for the arrest."

However, the court in that case found probable cause, and based the finding on the information received plus the observed conduct of the defendants.

It does not appear that the identity of the informer is essential to a defense on the merits, and, therefore, public policy forbids the disclosure of the identity of the informer, and the court in determining whether the agents had probable cause to search the automobile without a warrant has considered all the facts and circumstances disclosed by the testimony, including the information received by them from the informer, which information they, in good faith, at the time considered reliable.

The Government's objection to the question asking the identity of the informer should be sustained, and since probable cause existed for the search of the automobile, the motion to suppress the evidence should be overruled. An order in accordance with the above is being entered today, in which the exceptions of the defendant will be noted.