## UNITED STATES v. BIANCO.

No. 1625.

United States District Court
W. D. Pennsylvania.

Nov. 6, 1950.

240

Irwin A. Swiss, for Edward C. Boyle, United States Attorney, Pittsburgh, Pa., for the Government.

Premo J. Columbus, Pittsburgh, Pa., for the defendant.

MARSH, District Judge.

This case was heard upon defendant's motion to suppress and for return of evidence. From the testimony it appears that on March 24, 1950 at approximately 10:30 P.M., Joseph William Bianco was arrested by Special Agent W. M. Drew and two other agents of the Federal Bureau of Investigation at the Allegheny County Airport near Pittsburgh, Pennsylvania.

On that day, in Baltimore, Maryland, Special Agent duBois observed the defendant with two men known to him to be prominent in the lottery traffic in Balti-more. The sources of this knowledge were not given but duBois was currently investigating a lottery case in Baltimore and had specialized in the investigation of interstate transportation of lottery tickets since 1941. These three came out of a grocery store known to the agent to be "lottery head-quarters." He saw them get into a car belonging to one of the local men and trailed them to the Baltimore Municipal Airport where he saw defendant remove a large suitcase from the car and deposit it in a locker, after which the parties left. Later the agent learned that defendant was a Joseph Bianco, a resident of Pittsburgh, who had arrived in Baltimore that morning and had a reservation on· a plane leaving for Pittsburgh at about 8:30 P.M. He knew that a Joseph Bianco had been involved in lottery difficulties in Pittsburgh about eight years ago.

DuBois was told by two informants whom he believed reliable, but would not name, that Bianco was in Baltimore on lottery business; that his suitcase contained lottery materials; and that he was going to transport said materials to Pittsburgh, Pennsylvania.

This information was communicated to Special Agent Wood of the Baltimore office of the F.B.I., who telephoned it to Special Agent Drew at Pittsburgh at about 8:00 P.M. He also advised that defendant was expected to depart from Baltimore on Flight 31 for Pittsburgh at approximately 8:25 P.M. Drew informed his superior, Mr. DiLillo. Wood assigned Agent McKinnell to travel on the same plane with Bianco and this officer identified him to the waiting F.B.I. agents at Pittsburgh upon arrival.

Drew also knew that a Joseph Bianco had been involved in lottery trouble seven or eight years ago.

The arrest was made by Agent Drew without a warrant after following defendant to his automobile and while he was seated therein with the engine running. Upon inquiry defendant admitted that he had baggage and in company with the agents found the baggage attendant to whom he presented his ticket and the agents

took possession of his suitcase. At the F.B.I. office in Pittsburgh this suitcase was opened without a search warrant and considerable lottery materials were found therein. At first defendant protested and later, after the agents affirmed their right to do so, agreed to the opening of the suitcase. There was also lottery material found on defendant's person. The defendant was committed to jail and the next morning was formally charged with transporting lottery materials across the state line,[1] which is a felony.[2] Subsequently a hearing was held before the United States Commissioner and the Grand Jury returned an indictment containing six counts.

The testimony shows that the suitcase confiscated and searched by the Pittsburgh agents was the same suitcase which duBois had observed in defendant's possession in Baltimore.

■ The important question[3] which arises out of these facts is whether or not the arrest can be sustained. "Of course, a search without warrant incident to an arrest is dependent initially on a valid arrest." United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 432.

In my opinion, the arrest was illegal and the evidence should be suppressed and defendant's property returned. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153.

Although not mentioned by counsel I believe the applicable statute is as follows: "* * * agents of the Federal Bureau of Investigation * * * may * * * make arrests without warrant for felonies cognizable under the laws of the United States, where the person making the arrest has reasonable grounds to believe that the person arrested is guilty of such felony and there is a likelihood of his escaping before a warrant can be obtained for his arrest." Title 18 U.S.C.A. § 3052.

The evidence clearly shows that there was likelihood that the defendant might have escaped before a warrant could have been procured for his arrest.[4]

Without doubt the statute is affected by the Fourth Amendment,[5] the precise limitations of which have not been satisfactorily determined.

■ However, it is certain that the right of one to be secure in his person against

---

1. Title 18 U.S.C.A. § 1301. Importing or transporting lottery tickets: "Whoever brings into the United States for the purpose of disposing of the same, or knowingly deposits with any express company or other common carrier for carriage, or carries in interstate or foreign commerce any paper, certificate, or instrument purporting to be or to represent a ticket, chance, share, or interest in or dependent upon the event of a lottery, gift enterprise, or similar scheme, offering prizes dependent in whole or in part upon lot or chance, or any advertisement of, or list of the prizes drawn or awarded by means of, any such lottery, gift enterprise, or similar scheme; or knowingly takes or receives any such paper, certificate, instrument, advertisement, or list so brought, deposited, or transported, shall be fined not more than $1,000 or imprisoned not more than two years, or both."

2. Title 18 U.S.C.A. § 1. Offenses classified: "* * * (1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony."

3. If the arrest here were valid, another question might arise concerning the right to search defendant's suitcase, which was in the custody of the baggage attendant at the airport when the defendant was arrested in his car. Cases involving searches of checked suitcases are: United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650; United States v. Stein, D.C., 53 F.Supp. 911. In these cases, as in the instant case, no point was made concerning whether the officer has the right, incident to the arrest, to seize and search a checked suitcase.

4. A valid warrant could not issue before the agents knew defendant had crossed a state line with lottery material. Cf. United States v. Haberkorn, 2 Cir., 1945, 149 F.2d 720.

5. Fourth Amendment to the Constitution: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

unreasonable search and seizure is a fundamental right under this Amendment. This right is to be construed in a manner which will balance the public interest on the one hand against the personal rights of individuals on the other. The protection afforded extends to the guilty as well as to the innocent. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.[6]

The criterion for the application of these principles to all arrests without warrant is repeated in that case, 267 U.S. at page 161, 45 S.Ct. at page 288, and in others as follows: " 'If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient.' "

Unfortunately, there is no acid test. Each case depends on its own facts.

Defendant urges that hearsay evidence alone does not afford sufficient grounds for an arrest.[7] It has been held that hearsay evidence may justify an arrest without a warrant, but its weight is a matter for the sound discretion of the court. United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650.

In that case it is clear that the hearsay evidence was entitled to great weight. The information was obtained from prisoners in a penitentiary in Newark, New Jersey. There six prisoners, each corroborating the other, told the agent that defendant had theretofore sold narcotics in Newark. The element of prior knowledge of illegal transportation is entitled to great weight. It was present in the Carroll case and in Husty v. United States, 282 U.S. 694, 51

S.Ct. 240, 75 L.Ed. 629, both of which were cited by the court as authority for the decision. The information in the case at hand lacked this element. Although defendant had been involved in a lottery case seven or eight years ago there was no suggestion that he had ever been engaged in interstate transportation of lottery material.

Moreover, in the Li Fat Tong case, another informant, not a prisoner, told the agent that the defendant was then on his way from San Francisco to New York with narcotics. Almost simultaneously with the arrest defendant dropped a bottle containing traces of narcotics at the agents' feet. In that case the very accumulation of the hearsay evidence would naturally weigh very heavily with the court in exercising its discretion. In addition the agents knew defendant had been arrested twice before on narcotics and other charges.

In the Carroll case the defendants themselves disclosed to the agents their illegal activities. Subsequently other facts and circumstances occurred which were observed by the agents and which, together with their prior knowledge, afforded them reasonable grounds for the arrest.

In Husty v. United States, supra, in addition to the information received, the officer had prior personal knowledge that defendant was a "bootlegger." Moreover, the investigation of the officers, *after receiving the information, verified its accuracy.*

If we eliminate the dropping of the empty bottle, the Li Fat Tong case seems to stand almost alone[8] in justifying an arrest without a warrant solely on information received. All of the other cases involving

---

6. In Agnello v. United States, 269 U.S. 20, 25, 46 S.Ct. 4, 70 L.Ed. 145, the court said: " * * * Sanctity of the home is no greater than sanctity of the person. Indeed, the immunity of the person from arbitrary arrest is more highly prized than the immunity of the home from arbitrary search."

See also United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877.

7. Defendant relies on Worthington v. United States, 6 Cir., 1948, 166 F.2d 557, a

case where the information was given anonymously over the telephone and the resulting search of a dwelling was outrageous. There were no substantiating facts personally known to the arresting officers. See comment in Brinegar v. United States, 338 U.S. 160, 174 at note 13, 69 S.Ct. 1302, 93 L.Ed. 1879.

8. In King v. United States, 9 Cir., 1924, 1 F.2d 931 the court found the information to be reliable and positive.

arrests made on hearsay evidence which I have examined,[9] including United States v. Heitner, decided by the same court of appeals, contained in addition to the hearsay other facts and circumstances known to or uncovered by the officers. Because these additional facts and circumstances were convincing the legality of the arrest did not depend altogether upon the credibility of something told. Generally, justification was not sought because of belief based upon credible information alone. In United States v. Blich, D.C.D.Wyo.1930, 45 F. 2d 627, 629, justification of arrest was so sought and rejected.

In the Blich case, the district court held that information given by an undisclosed informant was not sufficient in itself to justify a search and seizure. The court said: "It is scarcely an answer to the proposition that an agent testifies that his informant was a reliable person, and that he believed the information so given, *unless the court sitting in judgment may have the right to determine whether, under all the circumstances, such information was reliable and the agent was justified in having such belief.* A belief must or should rest upon a substantial basis. It is not a question of impugning the motives or doubting the honest belief of the agent in regard to the information which he may have received. *It is simply requiring the witness to sustain his motives and his beliefs by all the evidence at his command."* (Emphasis supplied.) The court points out that an ill-intentioned person might give an officer information which would in many instances lead to humiliation and vexation of the innocent; " * * * and yet, with the failure to disclose the name of his informant, the * * * agent would be safely ensconced behind his blanket testimony that he was informed by a reliable person." [10]

The facts here must be scrutinized and weighed in the light of the decisions. First, it must be conceded that duBois, an able officer, believed what was told to him and he acted in good faith. Good faith and ability, however, are not enough to constitute probable cause. As stated in the Carroll case, supra, 267 U.S. at page 161, 45 S.Ct. at page 288, " 'That faith must be grounded on facts within knowledge of the * * * agent, which in the judgment of the court would make his faith reasonable.' "

It is implicit in the Fourth Amendment and the decisions that it is for the

---

9. In United States v. Heitner, 2 Cir., 1945, 149 F.2d 105, 107, the information "coupled with the observed conduct of [defendants], gave them 'reasonable cause' to make the arrest." The defendant tried to escape when he saw the officers approaching. This case is cited in United States v. Li Fat Tong, supra. In Scher v. United States, 305 U.S. 251, 254, 59 S.Ct. 174, 176, 83 L.Ed. 151. "The legality of the officers' action does not depend upon the credibility of something told but upon what they saw and heard * * *."

In Brinegar v. United States, 1949, 338 U.S. 160, 172, 69 S.Ct. 1302, 1309, 93 L.Ed. 1879, "the facts derived from [the agent's] personal observations were sufficient in themselves, without the hearsay * * *" to sustain the arrest. In United States v. Stein, D.C.W.D.N.Y. 1943, 53 F.Supp. 911, the arresting agent acting on information received personally trailed defendant and observed highly suspicious conduct. See opinion for comment on Carroll v. United States, supra, and Husty v. United States, supra.

In United States v. Bell, D.C., S.D.Cal. 1943, 48 F.Supp. 986; Barrett v. United States, 7 Cir., 1936, 82 F.2d 528; Suhay v. United States, 10 Cir., 1938, 95 F.2d 890, § 300a of Title 5, U.S.C.A. (repealed), is construed. This section is substantially re-enacted by § 3052 of new Title 18 U.S.C.A., which is partially quoted in opinion. In these cases the information was received (by teletype, etc.) by F.B.I. agents (who without warrants made or attempted to make the arrest) from other officers who had actually conducted the investigations, discovered the facts or knew of the criminal acts of the defendants. In all, warrants had been issued for the defendants prior to their arrests.

10. Sound public policy demands that an officer shall not be required to disclose the identity of his informants: Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151, supra; United States v. Li Fat Tong, 2 Cir., 152 F.2d 650, supra.

judiciary, not the arresting officers, to decide whether the facts and circumstances here presented were such as to warrant him and the other F.B.I. officers to arrest the defendant in Pittsburgh.

I can give little weight to the hearsay. That the information proved to be correct cannot be considered. The court is not advised by duBois of the character of the two informants or why he believed them to be reliable. Apparently they were not officers or other F.B.I. agents. The agent did not testify that his informants actually saw the lottery material in the suitcase or in Bianco's possession. He did not show whether they obtained their information together, or separately at different times; or whether they heard about it through idle talk, or from a third informant. It does not even appear that duBois interrogated his informants in order to satisfy himself that they knew the facts which they related to him. If an arrest were contemplated I doubt that a prudent and cautious officer would accept such information at face value but would at least inquire into the source of information and the reasons and motives of his informants.

For all that appears to the court, the information could very well have been a hunch, pure conjecture, or a malicious lie on the part of the informants. United States v. Blich, supra.

■ A showing must be made of the reliability of the information. *The court must be informed in order to exercise its discretion and determine if the hearsay evidence alone is of sufficient weight to justify an arrest.* Without such a showing there is no way a court can test the "reasonable cause."

Coupled with this insubstantial information was the knowledge of the agents that Bianco had been arrested on a lottery charge seven or eight years ago; that he was in the "headquarters" and in the company of two known lottery operators in Baltimore; that he removed a large suitcase from the car of one of them and deposited it in a locker at the airport; and that he transported that suitcase to Pittsburgh, Pennsylvania, on a plane.

■ ■ All of these facts and circumstances are consistent with innocence. They do not corroborate the speculative hearsay. Collectively, they are insufficient to find probable cause to arrest the defendant with or without a warrant. United States v. Clark, D.C., 29 F.Supp. 138, 139.

In the Clark case, in addition to information which, as here, appeared only to be speculation, there were similar additional facts, viz., the agent knew the defendant was an addict and saw her leave a grocery store where drugs were unlawfully sold. The court said: "No one would say that seeing an addict coming out of a suspected grocery store supplies a reasonable ground for believing that that addict has committed a felony.

 * * * * * *

"It seems to us that the Fourth Amendment * * * is whittled away to nothingness if it is held that a citizen may be arrested and searched without a warrant of arrest or a search warrant if only it is shown that some reliable informer has said the citizen has committed or is committing a felony, without any showing whatever (and there was none here) that the informer's information was itself more than mere guess-work and speculation."

In my opinion, on its facts the Clark case presents stronger grounds for probable cause than this case.

Cancerous as the lottery traffic is known to be in times like the present, the safeguards of freedom must not be cut away even though it means excluding evidence against the guilty.

The Government did not press waiver as a ground to use the lottery material as evidence. Obviously, the search of defendant and his suitcase was demanded under color of office in the headquarters of the F.B.I. It was reluctantly "granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right." Johnson v. United States, 333 U.S. 10, 13, 68 S.Ct. 367, 368, 92 L.Ed. 436.

An order will be entered suppressing the evidence taken from the person and suitcase of the defendant.