UNITED STATES of America

v.

James CASTLE.

Cr. No. 697–55.

United States District Court
District of Columbia.

Oct. 13, 1955.

Thomas Flannery, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Daniel I. Sherry, Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

Defendant, James Castle, was found guilty on September 6, 1955, on a two-count indictment charging possession and concealment of narcotic drugs.

Defendant has moved for a judgment of acquittal notwithstanding the verdict and, in the alternative, for a new trial on the ground that the Court should not have permitted in evidence certain property seized from him by police officers.

About 12.30 a. m. on May 27, 1955, defendant was arrested by two officers of the Metropolitan Police Department's Narcotics Squad in his Sixth Street, third floor apartment. The evidence indicates that one of the officers had received a tip from an informant over the telephone; that the officers then spoke with the informant in their police car while parked at Fifth and K Streets, N. W., and were told that the defendant, who resided on Sixth Street, was actively engaged in selling narcotic drugs. The informant said that the drugs could be found in an off-color white plastic vial which defendant kept either on the mantel in his apartment or on his person in a pocket.

This conversation took place between the hours of 11:30 p. m. and 12:00 midnight. The officers immediately contacted other members of the narcotic squad, gave them the information received, and asked if they would go along to defendant's apartment.

The two officers contacted went to the apartment and took up observation posts to watch the front and rear windows, while the two officers who originally received the tip went up to defendant's apartment. One of them knocked on the door, and defendant asked who was there. The police officer said, "Hat, man," (Hat being the name of a drug addict known to the officer). The defendant asked from within, "Is that you, Hat?" "Yes, man, open this door," replied the officer. Defendant opened the door about halfway. The officer had his wallet open, exposing his badge, and said "police."

In the words of the officer, "Immediately upon seeing me and my badge, he

threw an object behind the door. (This was later identified as a change purse). He then reached into his bathrobe pocket. When he reached into his bathrobe pocket, I didn't know what he reached for, so I reached out and put my arms around his arms and held them to his side, and as I did that, Officer Longo went to defendant's pocket and came up with a small vial which contained capsules of heroin." It was this vial which was introduced in evidence against defendant.

The evidence shows further that the officers who made the arrest had received prior tips from the informant, though not concerning this defendant; that they possessed information about a man called "Note", an alias the defendant used, who was alleged to be a drug peddler; that they did not ask the informant to sign an affidavit for purposes of obtaining an arrest and/or search warrant because they felt the hour unusual, and if they had to wait until the next day, the opportunity would be lost to make the arrest; that they did not place the apartment under general surveillance for the night because, they stated, it would put other drug addicts on notice and they would leave the area and/or dispose of any drugs in their possession. The evidence is clear that neither of the officers investigated the tip, although they did rely upon it.

Defendant maintains that the uninvestigated tip of this informer did not constitute probable cause to make an arrest, so that the entry and search by the officers was illegal; that the officers entered under color of authority, but without the actual authority to arrest, so that the search was incident to an unlawful arrest; that the government can only justify the arrest by the subsequent search and the search by the preceding right to arrest.

The position of the government is that the tip of the informer was a sufficient basis to arrest and then search defendant, but even if it were not, the arrest and search can be sustained on another theory, i. e., the officers, on the basis of the tip, had the right to knock on the door of defendant's apartment and talk to him. When they did so and defendant reached into his pocket, the officers had reason to believe that defendant was about to commit a felony, namely, assault with a dangerous weapon. Consequently they had the right to hold defendant and go into his pocket to see whether he was carrying a weapon. When they found narcotics, then and only then, was defendant arrested, for they now had evidence that a felony was being committed in their presence.

To this contention defendant asserts that since the officers were initially without authority to arrest and search him, defendant had the right to take reasonable precautions to protect himself, even assuming for sake of argument, that he had a dangerous weapon upon him, which in fact he did not.

It is elementary that "where * * * officers are not responding to an emergency, there must be compelling reasons to justify the absence of a search warrant. A search without a warrant demands exceptional circumstances * * *." McDonald v. United States, 1948, 335 U.S. 451, 455, 69 S.Ct. 191, 193, 93 L.Ed. 153. There was no emergency here, but an exceptional circumstance is considered to obtain when a search is made as incident to a lawful arrest. Whatever is then found upon the arrested person, or in his control, which is unlawful for him to have, and which may be used to prove the offense, may be seized and held to be used as evidence against him. Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. Such a search, without a warrant, is reasonable and it is only unreasonable searches that are prohibited by the Fourth Amendment. Weeks v. United States, 1914, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652. When the court is called upon to determine the legality of a search without a warrant, but based upon an arrest, it must scrutinize the validity of the arrest with great care for the Fourth Amendment, which gives to our citizenry reasonable security and freedom from un-

warranted prying into their personal affairs, declares that the right to privacy should yield to the right of search at the determination of an independent judicial officer rather than that of a policeman or any other agent of the government. It should " * * * receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured * * * by imperceptible practice of courts or by well-intentioned, but mistakenly over zealous, executive officers." Gouled v. United States, 1920, 255 U.S. 298, 303–304, 41 S.Ct. 261, 263, 65 L.Ed. 647.

■ Certainly the right to search should be no more lenient when a warrant is not obtained than when it is, and the "facts necessary to uphold an arrest without a warrant must be sufficiently strong to support the issuance of a warrant for arrest." Worthington v. United States, 6 Cir., 1948, 166 F.2d 557, 565; Wakkuri v. United States, 6 Cir., 1933, 67 F.2d 844, 845.

■ An arrest or warrant for an arrest may not be based upon the suspicion or opinion of some person, unsupported by personal knowledge of the facts, and a warrant to search a private home may not rest upon a mere statement of suspicion without the disclosure of supporting facts and circumstances to justify the suspicion. Worthington v. United States, supra; United States ex rel. King v. Gokey, D.C.1929, 32 F.2d 793, 794; Nathanson v. United States, 1933, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159.

■ The Court has reached the conclusion that the arrest was illegal; that the uninvestigated tip of this informer was not sufficient to establish the probable cause needed for a legal arrest.

■ While we do not question the good faith of the officers, their subjective good faith is not enough unless it is bottomed upon facts within their personal knowledge, some of which at least, would be competent as evidence in the trial of the offense before a jury. See Grau v. United States, 1932, 287 U.S. 124, 53 S.Ct. 38, 77 L.Ed. 212; Giles v. United States, 1 Cir., 1922, 284 F. 208.

Here the officers assumed the reliability of the informer and accepted the tip as gospel. They were able to relate it to the defendant as being the same individual about whom they had heard rumors in the past. But there was no emergency. The officers had heard of defendant's activities in the past. They had no reason to believe that he was about to flee or suddenly cease peddling narcotics. There is no compelling reason why they could not have had the house put under general surveillance until they were able to obtain a search warrant the next morning. Yet no such steps were taken, nor did the officers obtain, nor even seek to obtain, an affidavit of the informer. Under these circumstances we cannot sanction this arrest. Declaration of, and reliance upon suspicion or belief, without more, will not do. See United States v. Reynolds, D.C.1953, 111 F.Supp. 589.

While the evidence might be construed to infer that the officers were justified in going to the apartment of defendant to question him about the accusation, the more reasonable inference is that they went to the apartment for making an arrest. Compare Ellison v. United States, 1953, 93 U.S.App.D.C. 1, 206 F.2d 476, Cavness v. United States, 9 Cir., 1951, 187 F.2d 719.

■ Defendant suddenly reached into his pocket immediately after he opened the door. From this action the government would have the Court find that defendant was subject to legal arrest on the ground that he was about to commit an assault with a dangerous weapon. Yet the officers did not testify that he made menacing gestures or that they had any knowledge that defendant was dangerous. At no time did they see a dangerous weapon. No dangerous weapon was ever recovered. The most favorable testimony for the government is that one officer testified, "I didn't know what he reached for, so I reached out and put my arms around his arms and held them to

his side." As to this action, it might be recalled that the officers had been informed that defendant might be carrying the plastic container with narcotics in it on his person in a pocket. While we do not challenge the veracity of the officers in their statements of fear of attack, once again, by failing to obtain a warrant at the outset, their case is left open to the plausible inference that they were equally apprehensive that defendant might destroy any narcotics in his possession.

■ Police officers engage in dangerous and trying work. They must be able to protect themselves, and should do so, but such self-protection cannot convert an illegal arrest and search into a legal one and make illegally obtained evidence usable against a man in court. If after searching defendant they had found nothing, their affirmance of suspicion might constitute a good defense to an action in damages for false arrest, but it cannot make the search legal. The reasoning of the court in Johnson v. United States, 1947, 333 U.S. 10, 16–17, 68 S.Ct. 367, 370, 92 L.Ed. 436 is peculiarly apposite:

> "Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law."

The peddling of narcotics is a singularly detestable and reprehensible crime. It is a widespread evil which widely corrupts and even destroys those it touches. It must be wiped out, but it must be wiped out in a manner consistent with the protections our Constitution affords all people, innocent and guilty alike. We must conclude that the motion to suppress should have been granted.

A new trial is hereby granted wherein the evidence suppressed cannot be used.