**The UNITED STATES of America, Plaintiff,**

v.

**James Alonzo DRAPER, Defendant.**

**Cr. A. No. 15063.**

United States District Court
D. Colorado.

Dec. 11, 1956.

Donald E. Kelley, U. S. Atty. for the Dist. of Colorado, John S. Pfeiffer, Asst. U. S. Atty., Denver, Colo., for United States.

John J. Althoff, Denver, Colo., for defendant.

KNOUS, Chief Judge.

This matter arises upon the timely motion of defendant under Rule 41(b) F.R.Cr.P. 18 U.S.C.A. "for the return of seized property and the suppression of evidence." The defendant has been indicted for receiving and facilitating the transportation of heroin in violation of 21 U.S.C.A. § 174. By his motion he alleges in effect that certain law enforcement officers committed an illegal and unreasonable search of his person and possessions, and thereafter seized from him a quantity of heroin and a syringe. His motion seeks to suppress evidence of the heroin and a return to him of the syringe.

A hearing had upon the motion disclosed the following facts: John W. Marsh, a narcotics agent for the U. S. Treasury Department, received information from one James A. Hereford, since deceased, on or about September 3, 1956, that the defendant was "peddling" heroin to addicts in Denver. This was the first notice Agent Marsh or his department had of the defendant and his alleged activities. Mr. Hereford had been a special employee of the Bureau of Narcotics for some six months prior to that time, receiving small sums of money for information. His information in the past had always been corroborated and found to be reliable.

Thereafter, on September 7, 1956, Agent Marsh received information from the same source that the defendant had

left by train for Chicago the day before and would return by train to Denver on either the morning of September 8 or 9, with a quantity of heroin. A complete description of the defendant and his wearing apparel was given, and also that he was carrying "a tan zipper bag" and habitually walked "real fast."

Agent Marsh and other law enforcement officers went to the Denver Union Station on September 8, but the defendant did not show up. The surveillance was repeated on the morning of the ninth. The defendant at that time was seen to alight from a train. He fit the description given Agent Marsh precisely, was walking in a hurried manner, carrying the zipper bag in his right hand, and with his left hand thrust in his coat pocket. Marsh, in conjunction with a Detective Seaton of the Denver Police Department, approached the defendant, showed him his identification badge, and placed him under arrest. Following this, the defendant was asked his name, his reply was false; his billfold was taken from him which disclosed his correct identity; his left hand was pulled from his coat pocket disclosing two paper packages containing heroin, and his zipper bag was searched disclosing the syringe. Thereafter, he was taken to the office of the Bureau of Narcotics and retained in custody.

The officers proceeded as above set forth without a warrant of arrest or search warrant.

The Government seeks to sustain the search and seizure upon the ground that it was made incident to a lawful arrest. United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; United States v. DiRe, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1527, 91 L.Ed. 1871.

It was formerly the well-recognized rule that state law governed the validity of an arrest made without warrant. Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; United States v. DiRe, supra. However, by Public Law 728, § 104, 70 Stat. 570, July 18, 1956, 26 U.S.C.A. (I.R.C.1954) § 7607, Congress has now made uniform the law governing arrests by narcotic agents in these circumstances, by providing that such agents, among others, may

"(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

Thus, we are faced with the question of whether Agent Marsh, and those under his direction, had reasonable grounds, or probable cause, to believe that the defendant had committed or was committing an offense.

It is strongly urged by the defendant that there was no probable cause for the arrest, for it is alleged, probable cause cannot be based upon uncorroborated hearsay information standing alone. Worthington v. United States, 6 Cir., 1948, 166 F.2d 557; Wisniewski v. United States, 6 Cir., 1931, 47 F.2d 825; United States v. Clark, D.C.Mo.1939, 29 F.Supp. 138; United States v. Hill, D.C. D.C.1953, 114 F.Supp. 441; United States v. Castle, D.C.D.C.1955, 138 F. Supp. 436; United States v. Turner, D. C.Md.1954, 126 F.Supp. 349. Apparently, were the Second Circuit to be faced with the precise question, its view would be contrary. United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650; United States v. Heitner, 2 Cir., 1945, 149 F.2d 105, certiorari denied Cryne v. U. S., 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432; Somer v. United States, 2 Cir., 1943, 138 F.2d 790; United States v. Gowen, 2 Cir., 1930, 40 F.2d 593, reversed on other grounds Go Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374. See also Cannon v. United States, 5 Cir., 1946, 158 F.2d 952, certiorari denied 330 U.S. 839, 67 S.Ct. 980,

91 L.Ed. 1286; King v. United States, 9 Cir., 1924, 1 F.2d 931.

An examination of the authorities by the Court has disclosed no decisions of the United States Supreme Court or the Tenth Circuit Court of Appeals directly touching upon this question. The Government contends that a phrase contained in the decision of McIntire v. United States, 10 Cir., 1954, 217 F.2d 663, 666, certiorari denied 348 U.S. 953, 75 S.Ct. 442, 99 L.Ed. 745, to the effect that a peace officer may arrest without warrant on reasonable, trustworthy information, is controlling here. The phrase, however, is taken from the context of a decision which was not rendered upon the force to which the Government attributes the phrase. However, the efficacy of the principal authority relied upon by the defendant in support of his contention, Worthington v. United States, supra, as such authority, is open to some doubt. The decision of Grau v. United States, 1932, 287 U.S. 124, 53 U.S. 38, 77 L.Ed. 212, in so far as it held that a search warrant may issue only on facts competent before a jury on the trial of the offense, met with express disapproval in Brinegar v. United States, 1949, 338 U.S. 160, footnote 13, at pages 174–175, 69 S.Ct. 1302, at page 1310, 93 L.Ed. 1879. The substance of Worthington flowed from this principle enunciated in Grau. How much of the former fell with the latter is not easily determinable.

Be that as it may, in the opinion of the Court, under the facts here attending, the controversy is more academic than real. The term "probable cause" was given as close a definition, or, perhaps, more correctly, as close a "meaning" as the phrase itself permits, in Brinegar v. United States, supra. There, at pages 175 and 176 of 338 U.S., at pages 1310 and 1311 of 69 S.Ct., the Supreme Court stated:

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69,

quoted with approval in the Carroll opinion. 267 U.S. [132] at page 161, 45 S.Ct. [280] at page 288, 69 L.Ed. 543. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348, 3 L. Ed. 364. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288.

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

Applying these principles to the instant action, it is the opinion of the Court, that the Government has shown that Agent Marsh acted with probable cause in arresting the defendant, i. e., that he

was acting not upon mere suspicion but in fact had reasonable grounds for his belief in the guilt of the defendant.

Agent Marsh has a long record of service in ferreting out violators of the narcotic laws. The name of his informer was disclosed at the hearing had upon this motion. By the uncontradicted testimony of Agent Marsh, it was established that in his personal knowledge and through his own corroboration, the information supplied him in the past by this informer was reliable. The day which the defendant alighted from the train in Denver was upon one of the days specified by the informer that such event would take place. The description of the defendant as observed by Agent Marsh fit precisely that described to him. The gait of the defendant and the "luggage" carried by him were observed as described. As he walked, the defendant kept his left hand, which upon search disclosed the heroin, thrust in his coat pocket. Thus, the one remaining fact contained in the information, albeit the all important fact, not observed by Agent Marsh, was the presence of the heroin.

From these facts, it cannot be said that Agent Marsh acted other than as "a cautious man in the belief that the party [was] guilty of the offense with which he [was] charged." Stacey v. Emery, 1878, 97 U.S. 642, 645, 24 L.Ed. 1035. A belief in the presence of an unobserved fact contained in information deemed, by reason of corroboration of similar information received from the same source in the past, as trustworthy where all the other facts contained in the information have been observed as true, is not the unreasonable belief of an uncautious man.

The arrest having been lawfully made, the incident search and seizure was not in violation of the Fourth Amendment to the Constitution. Accordingly, it is

Ordered and Adjudged that defendant's Motion for the Return of Seized Property and the Suppression of Evidence, be, and the same is hereby denied.