KATE L. MOORE v. WILFORD B. THOMPSON.

*Pleading—Joinder of actions—Slander and false imprisonment—
Evidence—Prejudicial remarks of counsel—Instructions.*

1. Since the enactment of How. Stat. § 7759, trespass on the case lies for false imprisonment as well as for slander, and the two may be joined in one action.

2. In an action for slander and false imprisonment, it appeared that, after the plaintiff, a nurse, had left the service of a lady by whom she had been employed, the latter missed some articles of clothing, which had been mislaid by the housekeeper, and, suspecting the plaintiff of stealing them, communicated her suspicions to the defendant, her brother-in-law, and requested him to endeavor to secure the missing articles of the plaintiff. The defendant and an assistant met the plaintiff at the office of a physician, to whom the employer had communicated her suspicions, with a request that he co-operate with the defendant. The defendant charged the plaintiff, in the presence of the physician, with the larceny of the articles, and urged her to produce them, stating that "we have traced the things to you;" but she protested her innocence. Plaintiff also had an interview with the physician in his inner office, and he informed her that an officer was at hand to arrest her if she did not produce the stolen articles, the defendant being in a position to hear this conversation. The plaintiff started to leave the office, but the physician preceded her to the door, where he stood with his hand upon the door, and did not let her go out, which she made no forcible effort to do. The plaintiff testified that the defendant said that he would give her one hour in which to produce the things or acknowledge her guilt, and that she felt that she was a prisoner; that she had been told that an officer was present, and she found the assistant in the outer office, with whom the defendant, who was aware of her understanding as to the assistant being an officer, held whispered consultations. She further testified that the physician stated, in the presence of the defendant, "She is willing you should go and search her house," to which she replied that she could not go through the streets with an officer, but would go with the physician, or with her employer or any other woman, and that the defendant replied that he would not go without a proper officer. A bus was sent for, to which the plaintiff was conducted by the defendant and his assistant, and driven to her house, where a search was made. And it is held that the facts stated were sufficient, if believed by the jury, to justify a finding that the plaintiff understood that she was under restraint, to the knowledge of the defendant, as evidenced by his actions and language as testified to by the plaintiff.

3. The following instructions to the jury are held to have correctly stated the rule of law regarding malice and privileged communications:

   *a*—If you find that the defendant had no malice—that is, hatred or ill will—against the plaintiff, and that he had just

cause or excuse for making the accusation, and that he made
the charges simply to recover the things which he supposed
the plaintiff had taken, your verdict must be for the
defendant.

*b*—Under the proof in this cause, the words spoken by the
defendant come under the class which the law designates as
"privileged communications," and the plaintiff cannot recover
unless she shows actual malice—that is, hatred or ill will—on
the part of the defendant, or a want of just cause or excuse
in making the accusation.

*c*—If the defendant communicated to the physician and
others a criminal charge against the plaintiff, and in doing so
acted wantonly and recklessly, you may consider such reckless
and wanton conduct as bearing upon the question of malice.

4. The court was requested by the defendant's counsel to instruct
the jury that the physician was the agent of plaintiff's
employer, and not of the defendant, and that defendant must
not be held responsible for what the physician and employer
said or did; which request was not given, but the jury were
instructed that the plaintiff, if entitled to recover, was entitled
to such damages as should compensate her for the injury to
her character, and for the actual mental pain she had suffered
by reason of it. Testimony was admitted, against defendant's
objection, tending to show a misunderstanding between the
plaintiff and her employer, of which it did not appear the
defendant had any knowledge; and plaintiff's counsel, in sum-
ming up to the jury, stated that when plaintiff left her
employer "there was some misunderstanding, possibly," to
which statement defendant's counsel objected, on the ground
that the employer was not a defendant, and any such mis-
understanding had no bearing on the case, to which the court
replied that the counsel could take his exception, and he did
except to the statement of counsel and of the court. The
plaintiff's counsel, in commenting upon his own conduct, said,
"If that is blackmailing, then I glory in blackmailing these
defendants;" when he was interrupted by defendant's counsel,
who said, "There is only one defendant," to which plaintiff's
counsel replied that it might be easy for the defendant's
counsel to distinguish between them, but difficult for him.
And it is held:

*a*—That it was error to receive in evidence the proof of
such misunderstanding, it not being claimed that defendant
had any knowledge of it, and it having no tendency to show
malice on his part.

*b*—That the language used by plaintiff's counsel, connecting
the employer with the defense, was well calculated to have its

influence on and to prejudice the jury, in view of the court's refusal to charge as requested.

Error to Washtenaw. (Kinne, J.) Argued March 10 and 11, 1892. Decided July 28, 1892.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Henry C. Waldron (B. M. Thompson,* of counsel), for appellant.

*Sawyer & Knowlton (E. D. Norris,* of counsel), for plaintiff.

MONTGOMERY, J. This is an action for slander and false imprisonment. The plaintiff recovered, and the defendant brings error.

It is first claimed that trespass on the case for false imprisonment cannot be joined with case for slander. Since the statute (How. Stat. § 7759), trespass on the case lies for false imprisonment as well as for slander, and we think no valid objection exists to joining the two in one action. *Bellant v. Brown,* 78 Mich. 294; *Long v. Wayne Circuit Judge,* 27 Id. 164; *Miles v. Oldfield,* 4 Yeates, 427; *Krug v. Ward,* 77 Ill. 603; *Blalock v. Randall,* 76 Id. 228. See, also, 1 Chit. Pl. 199.

The testimony on behalf of plaintiff tended to show that she first came to Ann Arbor in December, 1887, and entered the homeopathic department of the University as a student. It appears that she was without means, and, for the purpose of supporting herself and children, she applied to Dr. Wood, a member of the faculty, for assistance in securing a situation as nurse, and was by him recommended to Mrs. Waldron, who employed her, and in whose employ she remained for about four weeks. After she left, Mrs. Waldron missed a night-dress, a

corset, a pair of stockings, and some other articles of small value, which had been mislaid by the housekeeper. Mrs. Waldron suspected the plaintiff of stealing them, and communicated her suspicions to the defendant, her brother-in-law, and requested him to endeavor to secure the missing articles of plaintiff. The defendant came to Ann Arbor, bringing with him one Mr. Hallock. Mrs. Waldron also sent by the defendant a letter to Dr. Wood, in which she communicated her suspicions to Dr. Wood, and requested his co-operation with Thompson. Hallock and defendant called upon Dr. Wood, and laid the charges before him. The plaintiff was then sent for, and came in response to the request, and earnestly protested her innocence. The defendant, in the presence of Dr. Wood and Mr. Hallock, charged her with the larceny of the articles, and urged her to produce them, stating, "We have traced the things to you." Dr. Wood had an interview with her in the inner office, when, according to her testimony, Dr. Wood informed her that an officer was at hand to arrest her if she did not produce the stolen articles. The defendant testified that he was in a position to hear this conversation which occurred in the inner office.

It is claimed by the defense that there is no evidence of false imprisonment. The plaintiff further testified upon this subject that she turned to go out; that Dr. Wood preceded her to the door; that she supposed that he was going to let her out, as he had always done before, but that he stood there, and held his hand on the door, and did not take his hand off, and did not let her go out; that she wanted to go out, although she made no forcible effort to do so. She was asked, "Why didn't you go out?" and answered, "Dr. Wood was at the door." Question, "I know he was, but why didn't you go out?" to which she answered, "I could not walk

through a closed door." The bill of exceptions also shows that she was forcibly detained, but it is claimed that this was an error of the stenographer in reporting her testimony. In our view, it is immaterial. The circumstances which constituted the restraint upon her liberty are fully detailed. She further testified that defendant said to her that he would give her just one hour to produce the things or acknowledge her guilt, and that she felt that she was a prisoner; that she had been told that an officer was present, and that she found Mr. Hallock present in the outer office, and that Mr. Thompson knew of this understanding, and also that he, during the time, called Hallock to one side, and held whispered conversations with him; that Dr. Wood said, in the presence of defendant, "She is willing you should go and search her house;" and that she replied, "I cannot go through the streets of Ann Arbor with an officer, but I would go with Dr. Wood, or I would go with Mrs. Waldron or with any other woman;" that Mr. Thompson replied, "I will not go without a proper officer;" and that thereupon a bus was sent for, and plaintiff was conducted by defendant and Hallock to the bus, and driven to her house, where a search of her trunk, etc., was made.

We think these facts were sufficient, if believed by the jury, to justify a finding that plaintiff understood that she was under restraint, and that defendant knew that she so understood it is evidenced from his actions and his language as testified to by plaintiff. It is not necessary, in order to constitute false imprisonment, that the party be restrained after an unsuccessful attempt to escape from custody. It is enough if the restraint be put upon a person either by force or fear. Cooley, Torts, 169; *Josselyn v. McAllister*, 25 Mich. 45.

It is also claimed that there was no proof of actual

malice, and that the circumstances show that the action was privileged as a matter of law. The court did charge the jury as follows:

"If you shall find that the defendant had no malice— that is, hatred or ill will—against the plaintiff, and that he had just cause or excuse for making the accusation, but that he made the charges simply to recover the things which he supposed the plaintiff had taken, then your verdict must be for the defendant, so far as the charges of slander are concerned."

And also:

"Under the proof in this cause, the words spoken by the defendant come under the class which the law designates as 'privileged communications,' and the plaintiff cannot recover unless she shows actual malice—that is, hatred or ill will—on the part of the defendant, or shows a want of just cause or excuse in making the accusation."

He also charged the jury that—

"If the defendant communicated to Dr. Wood and others a criminal charge against the plaintiff, and in doing so acted wantonly and recklessly, you may consider such reckless and wanton conduct as bearing upon the question of malice."

We think these instructions correctly stated the rule of law. In Newell on Defamation (page 501) it is said:

"The law requires such charges to be made in the honest desire to promote the ends of justice, and not with spiteful or malicious feelings against the person accused, nor with the purpose of obtaining any indirect advantage to the accuser. Nor should serious accusations be made recklessly or wantonly; they must always be warranted by some circumstances reasonably arousing suspicion. And they should not be made unnecessarily, to persons unconcerned, nor before more persons nor in stronger language than necessary."

In *Padmore v. Lawrence*, 11 Adol. & E. 380, it was shown that the defendant accused the plaintiff, in the presence of a third person, of stealing his wife's brooch.

Plaintiff wished to be searched. Defendant repeated the accusation to two women, who searched the plaintiff, and found nothing. Subsequently it was discovered that the defendant's wife had left the brooch at a friend's house. It was held that the mere publication to the two women did not destroy the privilege attaching to the charges, if made in good faith, but that all the circumstances should be left to the jury, who should determine whether or not the charge was made recklessly and unwarrantably, and repeated before more persons than necessary.

The defendant requested the court to charge the jury as follows:

"Dr. Wood was Mrs. Waldron's agent, and not Mr. Thompson's, and you must not hold defendant responsible for what Dr. Wood or Mrs. Waldron said or did."

This request was not given, but the court did charge upon the subject of damages:

"If you find that the plaintiff is entitled to recover in this cause, I charge you that she is entitled to such damages as shall compensate her for the injury she has received to her character, and for the actual mental pain she has suffered by reason of it."

The court had admitted, against the defendant's objection, testimony tending to show a misunderstanding between Mrs. Waldron and plaintiff, of which it does not appear that defendant had any knowledge; and the plaintiff's counsel, in summing up to the jury, stated: "I think the plaintiff went to Mrs. Waldron's some time in December, and left some time in January, stayed about three weeks, upon an agreed salary of four dollars per week. When she left there was some misunderstanding, possibly." Here counsel was interrupted by defendant's counsel, who said: "We object. Whatever misunderstanding there may have been with the Waldrons has no bearing upon this case; the Waldrons are not defendants

in this suit." *The Court:* "Take your exception, Mr. Waldron;"—to which remarks of counsel and ruling of the court the counsel for defendant then and there duly excepted. Thereupon plaintiff's counsel further addressed the jury, and said to the jury that it was their duty to render a judgment for the plaintiff, and give the Waldrons an opportunity to "whack up;" which remark was allowed to stand, and to which defendant's counsel also excepted. Plaintiff's counsel further in his address to the jury, commenting upon his own conduct, said: "If that is blackmailing, then I glory in blackmailing these defendants." He was interrupted by defendant's counsel, Mr. Thompson, who said, "There is only one defendant." Plaintiff's counsel replied, "It may be easy for you to distinguish between them, but it is difficult for me."

We think it was error to receive in evidence the proof of a misunderstanding between Mrs. Waldron and the plaintiff. It is not claimed that the defendant had had any knowledge of it, and it would not tend to show any malice on his part. He was entitled to justify his action upon the facts as they appeared to him, and could not be made responsible for any malice which Mrs. Waldron may have felt towards the plaintiff.

The language employed by plaintiff's counsel, connecting the Waldrons with the defense, was also, we think, well calculated to have its influence upon the jury. In view of the fact that it was the theory of the defense that the defendant was acting as agent for Mrs. Waldron in what he did, can it be said that this argument, when considered in connection with the omission to charge the jury specifically as requested, did not prejudice the jury? We feel constrained to hold that the record indicates that the defendant may have been and probably was prejudiced by this language, and the failure to charge the jury clearly upon this question. The verdict of $2,500

was a large sum, in view of the fact that the defendant acted upon some information, at least, that the plaintiff was guilty of larceny.

There are numerous other assignments of error, but we think no other questions are likely to arise upon a new trial.

For the errors pointed out the judgment must be reversed, and a new trial ordered.

MORSE, C. J., McGRATH and LONG, JJ., concurred with MONTGOMERY, J.

GRANT, J. The declaration in this case contains two counts,—one for false imprisonment and the other for slander. The verdict was general, and it is therefore impossible to determine whether the jury found the defendant guilty of one or of both the charges.

I think the evidence of the plaintiff failed to make out any case of false imprisonment. No arrest was in fact made, no warrant even issued, and not even a hint from any person that she was under arrest or restraint. Under these circumstances, one cannot be held guilty of false imprisonment. *Hill v. Taylor*, 50 Mich. 549. She was in the office of Dr. Wood, who, she says, was her friend. He had said nothing to indicate that he was in any manner hostile to her. It is evident that the letter from Mrs. Waldron to Dr. Wood induced in his mind an honest belief that plaintiff had taken the things. The only evidence of her proposed arrest is her statement that Dr. Wood, in the interview in his inner office, said to her, "If you don't give up the things, they will make you trouble; they have a warrant right here for your arrest;" and in another part of her testimony she says that Dr. Wood told her they had an officer, and would arrest her unless she produced the things. For this conversation the defendant was in no

manner responsible. He was not present at the interview, had not authorized any such statement, and if, while in the adjoining room, he had heard it, it would not bind him. If there was any restraint equivalent to false imprisonment, it was in the outer office. All that defendant then said, which can in any manner be so construed, is her statement that defendant said he would give her one hour to produce the things. No threat was made by other language or action, and she made no request, nor intimated any desire, to leave the room where this charge was being made against her character. Her testimony that she felt under restraint was incompetent. The record shows that she testified that she was forcibly detained. It is quite evident to me, from the context, that she said she was *not* forcibly detained. But, be this as it may, such testimony was incompetent. That was the question at issue, to be determined by the jury from what was said and done. The injustice and absurdity of permitting the witness to state how it seemed to her are apparent. How much she felt under restraint may be inferred from her testimony, viz.:

"I was not very courteous to Mr. Thompson. I told him not to talk to me in that way; that if he repeated that, I felt like slapping his mouth."

It furthermore appears from her own evidence that, while Mr. Thompson and Mr. Hallock went out for a conveyance, she remained with Dr. Wood in his office, and there is not one word of evidence tending to show that Dr. Wood meanwhile exercised the slightest restraint over her movements. Under such circumstances one cannot, either legally or justly, be held liable for false imprisonment.

Defendant was a relative of Mrs. Waldron. He and Mr. Hallock called upon her, and found her writing a letter to Dr. Wood, which she desired to go by the first

mail. She then told them the contents of the letter, which contained the charge against plaintiff, and the circumstances under which she charged the plaintiff with having taken the missing articles. She then requested him to take the letter to Dr. Wood. This he did. The learned judge instructed the jury that the communication was privileged, and that—

" The case, so far as the question of slander is involved, must turn upon the question whether or not the defendant acted in good faith and without ill will or malice."

If Mrs. Waldron acted in good faith in making this charge (and she is certainly the one responsible for it), she could not be found guilty of slander, if she had been present instead of Mr. Thompson, and had then made the statements that he made. Upon the trial the defense offered evidence tending to show that Mrs. Waldron acted in good faith. This was excluded under objection by plaintiff's counsel as incompetent, the court remarking: "I don't hear any intimation but what Mrs. Waldron is believed to have acted in good faith in this matter." This statement was not controverted by the plaintiff or her counsel, and their silence certainly would justify the court and the jury in finding: " It is conceded that Mrs. Waldron acted in good faith." Such concession would bar any recovery on the ground of slander. Had Mrs. Waldron caused plaintiff's arrest on the charge of larceny, and upon being discharged plaintiff had brought an action for false imprisonment, such concession would have barred recovery, because good faith means probable cause and absence of malice. In this case Thompson only repeated the charge which Mrs. Waldron had made, both in the letter to Dr. Wood and to himself and Hallock.

The plaintiff herself was responsible for what was said about the transaction in the presence of Mrs. Taylor. She called Mrs. Taylor into the room, and herself told

the charge that was made against her.   She invited what was there said, and cannot now be heard to complain of it.

Under this record, I think a verdict should therefore have been directed for the defendant.

Letters were introduced, written by plaintiff's attorneys prior to commencement of suit to Mr. Waldron, and his reply thereto; also letters between plaintiff and Dr. Wood, and conversations between her and Dr. Wood, and between her and the treasurer of the University. This evidence was incompetent.   The defendant was in no manner connected with or responsible for these letters or conversations.