## GILLIAM v. UNITED STATES.
### No. 11205.

United States Court of Appeals
Sixth Circuit.

June 1, 1951.

McAllister, Circuit Judge, dissented.

**322**

M. Gilbert Goodwin, Lenoir City, Tenn., Hobart F. Atkins, Knoxville, Tenn., on brief, for appellant.

Otto T. Ault, James M. Meek, Knoxville, Tenn., on brief, for appellee.

Before SIMONS, ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

In an indictment containing three counts appellant was charged with violation of § 2803(a) and § 2913, I.R.C., 26 U.S.C.A. §§ 2803(a), 2913, by transporting possessing, and concealing distilled spirits upon which the taxes imposed by the internal revenue laws of the United States had not been paid. Jury trial was waived and the case was tried to the court. Prior to the trial a motion to vacate seizure and suppress evidence was overruled. By stipulation between the parties it was agreed that the same evidence heard and introduced and the same objections interposed by the accused on the hearing of the motion to suppress the evidence should be treated as re-. introduced and reinterposed on the trial. The court found appellant guilty under all counts of the indictment, sentenced him under the first and second counts, the sentences to run concurrently, and placed him under probation on the third count.

The case arises out of the following facts, which are not disputed:

On August 12, 1949, investigators for the Alcohol Tax Unit at Knoxville, Tennessee, received information from a deputy sheriff that he had been told by a reliable informer that appellant, a known bootlegger, had left his home in Loudon County, Tennessee, to go to the Ball Play region of the adjoining county of Monroe, a moonshining district, to pick up a load of whiskey. The federal officers were given the license number and description of appellant's automobile. On the same afternoon they went to the neighborhood indicated and after some time saw an automobile of the given description turn into the Ball Play Road, driven by appellant. The federal officers had neither a warrant for arrest, nor any search warrant. They followed the automobile for some distance, stopped by the side of appellant's car, and Officer Bomar got out and said, "Pull over Gilliam, we are Federal Officers." Appellant stopped, and Bomar said: "How much whiskey have you got?" whereupon appellant "reached down between his legs and got a little square jar, about a half pint size and said: 'Here it is.'" The bottle contained illicit whiskey. Appellant handed it out of the window and said it was all he had and that he "had found it by the road." Bomar then searched the rear of the car and found 24 half-gallon jars of whiskey. After the search and discovery of the quantity of whiskey, none of which carried tax stamps, the officers told appellant he was under ar-

rest. The second officer corroborated the testimony of the first in all essential particulars.

Appellant contends, as he contended in the District Court, that the court committed reversible error in refusing to sustain the motion to suppress the evidence, and that there was no competent testimony upon which to base a finding of guilty. He argues that the whiskey was discovered as the result of an exploratory search made by reason of hearsay information which, under the Fourth Amendment, could not authorize the issuance of a search warrant.

This contention ignores the facts of the case, "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L. Ed. 1879. Appellant's car was searched not as soon as it was stopped, but after a conversation in which appellant produced a bottle of unstamped whiskey, said that it was all he had, and that he had found it by the road. The fact that a known bootlegger was found within a notorious bootlegging area in the exact car which had been described to the officers, in possession of unstamped whiskey concerning which he gave a highly questionable explanation, constitutes reasonable cause within the purview of Brinegar v. United States, supra. The illegal possession was seen, and appellant's unconvincing story was heard by the officers themselves. "The Fourth Amendment does not prohibit the search, without warrant, of an automobile, for liquor illegally transported or possessed, if the search is upon probable cause; and arrest for the transportation or possession need not precede the search." Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. Husty v. United States, 282 U.S. 694, 700, 51 S.Ct. 240, 241, 75 L.Ed. 629. Whether the search of an automobile without a warrant is valid depends upon whether the search is made upon probable cause, that is, upon a belief reasonably arising out of circumstances known to the officer that the vehicle contains unstamped liquor. The question presented is not whether probable cause existed before the automobile was stopped and the officers talked with appellant. The question is whether the combination of what the officers saw with the reliable information they had received is probable cause to justify the search.

The stopping of appellant's car was not an arrest. No intent to apprehend appellant was shown and no move was made to take him into custody at that time. The officers did not open the car door when it was stopped, nor state that appellant was under arrest, nor touch his person. At the commencement of the search, which was after the car had been stopped, reasonable grounds existed for believing that a felony was being committed, and the subsequent arrest was valid.

Hearsay evidence is not to be eliminated as a basis, together with other circumstances, for probable cause justifying a search. United States v. Li Fat Tong, 2 Cir., 152 F.2d 650; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 69 L.Ed. 1032; Husty v. United States, supra. Here the case presents positive evidence of what was seen and heard by the officers at the place of the search, in addition to what they were told by the deputy sheriff. United States v. Heitner, 2 Cir., 149 F.2d 105, certiorari denied, 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432; Wisniewski v. United States, 6 Cir., 47 F.2d 825; One 1941 Ford ½ Ton Pickup Automobile Truck v. United States, 6 Cir., 140 F.2d 255; Brinegar v. United States, supra.

Judgment affirmed.

McALLISTER, Circuit Judge (dissenting).

James Paul Gilliam appeals from a conviction on the charge of possessing and transporting distilled spirits in violation of Section 2803(a) of the Internal Revenue Code. He contends that he was arrested and his automobile searched by federal officers without probable cause, in contravention of the Fourth Amendment to the Federal Constitution. Error claimed is failure of the district court to suppress the evidence obtained by the arrest and search.

Gilliam, a resident of Loudon County, Tennessee, was driving his automobile in Monroe County, of that state, on the afternoon of August 12, 1949, when a car in which two federal agents were pursuing him, overtook him and pulled up alongside. One of the officers called out to appellant: "Pull over Gilliam, we are Federal Officers." Gilliam immediately stopped his car and one of the officers drove the government car around in front of Gilliam's car so that he could not get away from them. Both officers then went up to the appellant's car and Agent Bomar walked up to the open window where appellant was sitting and said: "How much whiskey have you got?" Appellant then reached down in front of him on the floor and picked up a small one-half pint jar, which he handed out the window, declaring, "That is all I have got." One of the officers then took his car keys, opened the trunk of his car, found twenty-four half gallon jars of unstamped whiskey, and arrested him. The circumstances leading up to the apprehension of Gilliam are as follows: The two federal officers, on a casual visit to the office of the sheriff of Loudon County, were advised by one of the deputies that some informer, whom he considered reliable, had told him that Gilliam had gone to Ball Play, in Monroe County, for a load of whiskey and would be back that afternoon. The deputy sheriff further stated that Gilliam was known as a bootlegger in Loudon County; that the sheriff had raided him repeatedly but had never been able to obtain a case against him because he had always managed to pour the whiskey out. But they had never even arrested him, and neither the deputy sheriff nor anyone else ever appeared as a witness to prove that Gilliam was known as a bootlegger, that he had been "raided," or that he had "poured the whiskey out." One of the federal officers stated on the trial that quite a lot of moonshining was carried on in the section of Ball Play. The federal officers could not recall the name of the deputy sheriff who had retailed the information to them, but stated that they knew him and had worked with him, and had found that, on other occasions, he had given them reliable information regarding law violators. They did not know who the man was who had furnished the information to the deputy sheriff that appellant was planning to transport illicit liquor. The federal officers had never seen or heard of Gilliam before they overtook him on the highway. They had observed no violation of the federal law before they commanded Gilliam to stop, and aside from the information received from the deputy sheriff, had no reason to believe that he was committing any offense, or ever had committed any offense. They identified him from the description of his car and its license number which had been furnished to them by the deputy sheriff. Solely upon the information given, they stopped him, blocked his way of escape, searched his car, and arrested him. The deputy sheriff was not with them and did not participate in the arrest. The only issue is whether they had probable cause to search or arrest, within the meaning of the Constitution. What the deputy sheriff told them about Gilliam's reputation and the fact that the sheriff could never make a case against Gilliam would not have justified a search or arrest. The crux of the case is whether the information given to the deputy sheriff by an informer, and such information, in turn, passed on by him to the federal officers, constituted probable cause for the arrest and search.

Illegitimate and unconstitutional practices get their first footing by silent approaches and slight deviations from regular modes of procedure. "This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance." Boyd v. United States, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746. Probable cause to arrest or search is measured by the knowledge of the arresting officer, not by his intent. It means probable cause known to him at the time of the arrest. But the standard applied to his consciousness is external to it. The question is not whether he thought the facts to con-

stitute probable cause, but whether the court thinks they did. See Director General of Railroads v. Kastenbaum, 263 U.S. 25, 27, 44 S.Ct. 52, 68 L.Ed. 146; Wisniewski v. United States, 6 Cir., 47 F.2d 825. It follows that an arrest or search without a warrant can not be justified on the ground that the fruits of the search justified the conclusion that the officer's knowledge at the time of the arrest gave him grounds therefor. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210. If the information at the disposal of an arresting officer is wholly insufficient to justify the issuance of a warrant for arrest, an arrest in such a case with an invalid warrant, or with no warrant at all, would be an illegal arrest. Worthington v. United States, 6 Cir., 166 F.2d 557. In the case of a search with a warrant, the affidavit on which the warrant is issued must set forth facts from which the existence of probable cause can be determined. And the warrant must contain more than a mere statement that someone had declared under oath that he had good reason to believe, and did believe that the accused was violating the law. Ripper v. United States, 8 Cir., 178 F. 24. The finding of probable cause should be based, not on the opinion or belief of a witness or witnesses, but on facts set forth in the affidavit from which the existence of probable cause can be fairly inferred. Otherwise, the conclusion would be that of the witness, and not that of the judicial officer in whom alone the Constitution has vested the extraordinary power to issue search warrants, and who is thus legally charged with the duty of preventing unreasonable searches and seizures. United States v. Borkowski, D.C.Ohio, 268 F. 408. It is, of course, well settled that an arrest may be made by an officer on evidence furnished to him by an informer, since such evidence may constitute reasonable and probable cause. In such cases, it is proper to compel officers to disclose the source of the information—subject to some limitations—since otherwise there is no way to test whether they have had reasonable cause for the arrest. United States v. Heitner, 2 Cir., 149 F.2d 105. But the officer can not be compelled to disclose the identity of the informer unless it appears on the trial that the disclosure of the informer's name is necessary or desirable to show the prisoner's innocence. United States v. Li Fat Tong, 2 Cir., 152 F.2d 650. Although the fact that evidence furnished an officer by an informer—if the officer considers him a reliable informer—may constitute probable cause for an arrest, nevertheless, it does not follow that an arrest is made by an officer with probable cause where he relies upon information which has been furnished him by another party who has received such information from an informer unknown to the officer making the arrest. If such information constituted probable cause, information passed on successively through a dozen different informers—each with a different motive, a different design to harass, a different grudge, or a different purpose to inflict injury—would constitute probable cause; and probable cause, as used in the Fourth Amendment, would be meaningless. When an officer does not know who has furnished the information that an offense is being committed, he can not, himself, know whether it is reasonably trustworthy; and probable cause would not exist unless the facts within the knowledge of the officer, and of which he has reasonably trustworthy information, are sufficient, in themselves, to warrant a man of reasonable caution in the belief that an offense had been, or was being, committed. See United States v. Horton, D.C.Mich., 86 F.Supp. 92. If the arresting officer does not even know who the person is, who gives the information, how can this information be considered by him to constitute reasonable grounds for his belief? In coming to the belief that there is probable cause, he must form some judgment; and he can not form a judgment as to whether there is probable cause, unless he knows who furnishes the information on which he comes to this conclusion. In the circumstances of this case, the officer making the arrest could only have relied upon another party who told him that he believed the information given by the unknown and undisclosed informer; and this would not constitute probable cause. While the officer might well be suspicious, suspicion is not enough.

The cases relied upon by the government, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, are not here applicable. In the Carroll case, the fact that the accused was engaged in the illegal transportation of liquor was not surmise. Carroll and his companion, some time before their arrest, had come to meet the two arresting officers, not then known as officials, upon the understanding that they were customers wanting liquor. Carroll promised to sell and deliver them three cases at $130 a case. For some reason, there was a failure to deliver, but when the officers arrested them, they had this positive and personal knowledge that these men were trafficking in liquor. When the officers had been bargaining for the liquor, they saw and learned the number of the car these bootleggers were using in their business. Later, the officers saw them coming from the direction of the great source of their supply, on the international boundary, which was one of the most active centers for introducing illegally into this country spirituous liquors for distribution into the interior. They were proceeding on the highway toward the city in which they plied their trade, and they were driving the same car they had used when they offered to sell the whiskey to the officers. The holding that there was probable cause in the Carroll case in no way supports such a conclusion in the case before us. In the Scher case, the legality of the arrest and seizure did not depend upon the credibility of something told to the officers, but upon what they had seen and heard—what took place in their presence. In the Brinegar case, the arresting officer had previously arrested the accused for illegally transporting liquor; had seen him loading a truck with liquor in Missouri where, however, the sale of liquor was legal; knew his reputation as a hauler of liquor; and arrested him when he recognized him driving a heavily loaded car in Oklahoma, where the sale of liquor was illegal. We see no similarity to the instant case.

It is, however, argued by the government, and the court found, that the officers did not arrest Gilliam until they had searched his car. The court stated in its opinion, after reciting the circumstances, as hereinbefore set forth, that, "Combining what they had heard 'with what they saw, the officers were not unreasonable in concluding that defendant was engaged on that occasion in violating the law. They accordingly were justified in *stopping* defendant's automobile and searching it." But they did not see anything even suspicious, before they stopped the car. Although the court had observed, in its opinion, the fact that appellant, in his motion to suppress the evidence, made no mention of the liquor in the half pint container, which he showed the officers after they stopped him, it was not given as a reason justifying probable cause to arrest. The government, however, declares that Gilliam voluntarily showed this liquor to the officers when they stopped him, and that its possession, in itself, constituted a violation of the federal law, and justified the search and arrest. The arresting officers themselves testified that they arrested Gilliam as the result of what they found after searching his car. At no time until the arguments was the arrest or search justified on any grounds except probable cause based upon the statement, several hours before the arrest, of the deputy sheriff. It was never claimed that what the officers saw before they searched the car justified the search. Appellant's contention in this regard is that he was arrested when unlawfully stopped on the highway by the officers, and the evidence which they secured by such arrest should have been suppressed.

In calling upon Gilliam to stop his car, the officers did so by virtue of their official position, and ordered him to pull over and stop, warning him at the same time that they were federal officers. As soon as he stopped, the driver of the government car drove out in front of Gilliam's car, to block his way and to prevent his getting away from them. They then demanded how much liquor he had. Their ordering him to stop, in their capacity of federal officers,

and the compulsion exercised by them in depriving him of his freedom of proceeding along the public highway, constituted an arrest. These were armed men ordering Gilliam to stop and blocking his way with their car—at least we can assume that federal revenue officers engaged in the work of pursuing and arresting moonshiners in Tennessee were armed. What would have happened if Gilliam had defied their commands and continued on his way? They claimed to have reasonable grounds to believe he was violating the liquor laws and, therefore, could well have used their guns, if necessary, to stop and search his car or to arrest him. If they had reasonable grounds for search in this case, they had reasonable grounds for arrest. They did not claim the right to arrest him because he showed the liquor in a one-half pint jar, but on the ground that they had probable cause to stop and search. They had no right to stop him unless they had a right to search him. The trial court did not find that they had a right to search him because he had the one-half pint jar, but that the right to search was based on probable cause. Anything they found after they forced him to stop was found as a result of their search. If officers do not have probable cause to arrest or search, their restraint of another's freedom of locomotion by words, acts, or the like, which would induce a reasonable apprehension that force would be used unless he submitted, constitutes an arrest. To constitute an arrest, it is not necessary to touch the person of one who is arrested, or to state to him that he is arrested. When these armed officers pursued appellant, commanded him to stop, warning him that they were federal officers, forced him to pull off the road and stop his car in open country, blocked his way by driving their car directly in front of his car, and surrounded his car, demanding that he tell them how much liquor he had, it does not seem to me that this compliance with their commands was quite voluntary. At that time he was as fully within their power and subject to their will as though they were seizing and holding him until they found out what they wanted. I do not believe that a citizen has to risk trying to escape and being shot down to prove that his actions under such circumstances are not voluntary. For it is enough to constitute an arrest if the conduct of the officers operates on the will of the person threatened, and results in a reasonable fear of personal difficulty or personal injury. A person would not have to await an application of actual force, or actively resist, or make any effort to escape. See Great Atlantic & Pacific Tea Co. v. Smith, 281 Ky. 583, 136 S.W.2d 759; National Bond & Investment Co. v. Whithorn, 276 Ky. 204, 123 S.W.2d 263; Great Atlantic & Pacific Tea Co. v. Billups, 253 Ky. 126, 69 S.W.2d 5; Miller v. Ashcraft, 98 Ky. 314, 32 S.W. 1085; Moore v. Thompson, 92 Mich. 498, 52 N.W. 1000. Armed officers, or any officers, have no right to command citizens to stop on a public highway and to force their cars off the road and block their way, except on probable cause to suspect an offense is being committed, or possibly for safety or traffic reasons, not here relevant. The only way to prevent such abuses is to exclude evidence so obtained against those who are frequently guilty. As Judge Otis said in United States v. Clark, D.C.Mo., 29 F.Supp. 138, 140: "It seems to us that the Fourth Amendment to the Constitution * * * is whittled away to nothingness if it is held that a citizen may be arrested and searched without a warrant of arrest or a search warrant if only it is shown that some reliable informer has said the citizen has committed or is committing a felony, without any showing whatever * * * that the informer' information was itself more than mere guess-work and speculation. * * *

"We must confess that we now draw back a little when we hear asserted a claim of constitutional right in a criminal case. Almost always, as in this instance, it is advanced to shield an individual who is guilty from the justice of the law he has flouted. The only satisfaction we can derive from maintaining the constitutional rights of such a person arises from the knowledge that the obligation of the judicial oath requires it and from the certainty that only so may the protection of the Constitution be preserved against the day when innocent

men will need it as a defense from governmental tyranny."

The instant case is a much stronger case than United States v. Clark, supra, for here the information upon which probable cause was asserted came, not from such an informer, but from another party who received it from such an informer, who may have received it through countless others.

In a notable opinion, filed as a dissent, in Brinegar v. United States, supra, Mr. Justice Jackson made the observation—concerning which there ·can be no difference of views—that "the right to be secure against searches and seizures is one of the most difficult to protect. Since the officers are themselves the chief invaders, there is no enforcement outside of court.

"Only occasional and more flagrant abuses come to the attention of the courts, and then only those where the search and seizure yields incriminating evidence and the defendant is at least sufficiently compromised to be indicted. If the officers raid a home, an office, or stop and search an automobile but find nothing incriminating, this invasion of the personal liberty of the innocent too often finds no practical redress. There may be, and I am convinced that there are, many unlawful searches of homes and automobiles of innocent people which turn up nothing incriminating, in which no arrest is made, about which courts do nothing, and about which we never hear.

"Courts can protect the innocent against such invasions only indirectly and through the medium of excluding evidence obtained against those who frequently are guilty." [338 U.S. 160, 181, 69 S.Ct. 1313.]

It is for these reasons that courts are concerned that no arrests or searches be made with or without warrant except upon probable cause, as probable cause shall be construed in accordance with the purpose of the Fourth Amendment, giving to the language of the Amendment a broad and liberal construction in favor of the individual in order to thwart illegal invasion of this constitutional safeguard to the end that the Amendment, while it may, at times, shield the guilty, shall always protect the innocent.

Since the arrest and search in this case were made without probable cause, the evidence should have been suppressed. In my opinion, the judgment of the district court should be reversed and the appellant ordered discharged.