622

## UNITED STATES v. RICHARD.

No. 15229.

United States District Court
E. D. Tennessee, N. D.

Jan. 14, 1952.

Otto T. Ault, U. S. Dist. Atty., James M. Meek, Asst. U. S. Dist. Atty., Knoxville, Tenn., for plaintiff.

Wm. E. Badgett and Taylor & Badgett, all of Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

The case is before the court on defendant's motion to suppress evidence obtained by search of an automobile without a search warrant. This search occurred at about six o'clock on the morning of July 18, 1951, near the intersection of Hill Street and Locust Street in the City of Knoxville.

About ten days prior to that date, Herman Bomar, an agent of the Alcohol Tax Unit, was told by an informer, whom he had known for five or six years, that defendant was operating as a bootlegger; that she regularly obtained whiskey at an early morning hour on Vine Street and transported it away from the place of its purchase; that her means of transportation was a taxicab of the City Cab Company; that at almost exactly six o'clock every morning a City Cab picked her up, at, or near, the point where the whiskey was obtained, and transported her and the whiskey by a particular route to her home in a Negro settlement near the foot of Locust Street, along the bank of the Tennessee River.

A day or two later, Mr. Bomar contacted the informer again and was told by the latter that defendant had brought in another delivery that morning. The informer again told Mr. Bomar that this procedure was a regular morning affair, occurring each morning at six o'clock and following the same definite route past the intersection of Hill and Locust Streets, the means of conveyance being always a City Cab. Mr. Bomar talked with the informer on about three occasions prior to the morning of the search and on each occasion was given the same story. In this connection, Mr. Bomar testified: "* * * and the day before we were there that morning, I talked to him, and he said 'yes, she brought some this morning and she will bring more in the morning. She always comes in a City Cab. She comes at exactly six o'clock, and the cab comes down Hill Street,' the direction in which it did come, and 'turns into Locust.'"

As to how the search occurred, Mr. Bomar, who was assisted by Investigator Dickey, gave the following version: "We were parked on Locust Street at the intersection of Hill, parked on our left side of the street directly next to Hill Street. That is the front of our car was at Hill Street. We were headed south. At exactly six o'clock in the morning, a City Cab came headed west on Hill Street and

turned to its left, south, the same way we were headed, down the hill on Locust Street toward Ella Mae's home. At the time it came, pulled in front of us, it almost came to a stop. The street was almost blocked by parked cars at that point. And I saw Ella Mae riding in the back seat of the cab. She looked at us and I could tell by her expression that she also recognized us. As the cab turned, we started our car, turned on the siren, and pulled the cab over. It went about half the distance down toward her house before it pulled over. The cab pulled over immediately, and we then searched the cab. At Ella Mae's feet in the rear seat of the cab was a brown zipper bag. Inside this bag were four jars of non-tax paid whiskey —four half-gallon jars."

In the course of the hearing, and while Mr. Bomar was testifying, the court asked him why he did not get a search warrant or "why couldn't you have for her house and her premises, for the entire premises, and be stationed there when she comes at six o'clock one of these mornings, and just search the whole premises, not only the house, but the out houses and grass and just everything?" To which question the witness replied as follows:

"It is almost impossible to get in very close to her, your Honor. We have watched her from across the river there, the distance from the East Tennessee Baptist Hospital to this side of the river with binoculars, and we can see quite a bit of what was going on. However, there is always from five to twenty persons loitering in and about her premises. The liquor is usually hidden on somebody else's premises, over on city property, under the viaduct, or over in a vacant lot. I don't know who owns that across the road from that. We have a number of times attempted to apprehend her with a small amount. She would throw it down, pour it out; several times. One time I was after her, and she broke a jar, if you recall, broke a bottle, small container. We could smell whiskey, but couldn't find the container, but threw it up under a house where there were a number of old broken bottles and jars.

"She has three dogs that stay with her continually. One time while the premises were under observation she got into an argument with a colored man down there, and she and the three dogs had a fight with the man, and I don't know whether he was injured or not, but the dogs took her part; and the dogs pick us up almost every time we try to hide around."

■ The foregoing statement by Mr. Bomar is part of the background for determination of whether probable cause existed for search of the automobile without the aid of a search warrant. If probable cause existed the absence of a search warrant under the existing circumstances would not invalidate the search. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Bradford et al. v. United States, 6 Cir., 194 F.2d 168.

■ Here the searching officers not only had the background knowledge of defendant's questionable activities, but they also had advance information from their informer that the defendant was carrying on an illicit traffic in tax-unpaid whiskey. The manner of her operation had been clearly detailed to them by the reliable informer. She operated on a regular morning schedule and followed a definite route and rode always in a taxicab of a particular company. The officers rechecked with the informer on a number of occasions during the days preceding, and on the morning immediately before the search, and were informed that the schedule was still being followed with clock-like regularity.

With that pattern in mind, the officers stationed themselves at a point on the regular route of the defendant, and at the scheduled moment she arrived in the customary manner and at the customary place. Nothing could have been more clearly a part of a definite pattern. Indeed, it was so clear and consistent in detail, that probable cause departed almost wholly from the domain of conjecture and entered the realm of reasonable certainty.

In the recent case of Bradford et al. v. United States, decided by the Court of Appeals for the Sixth Circuit, 194 F.2d 170, the court (Hicks, Chief Judge) said:

"The vital question is whether at the time appellants were arrested the officers had probable cause to believe that they were transporting non-tax paid whiskey in the automobile. Probable cause has been defined many times by the Supreme Court as well as by this court. Carroll v. United States, 267 U.S. 132, 133, 155, 45 S.Ct. 280, 69 L.Ed. 543; Husty v. United States, 282 U.S. 694, 701, 51 S.Ct. 240, 75 L.Ed. 629; Scher v. United States, 305 U.S. 251, 59 S. Ct. 174, 83 L.Ed. 151; Wisnienski v. United States, 6 Cir., 47 F.2d 825; Gilliam v. United States, 6 Cir., 189 F.2d 321, 323. In the latter case the court said: 'Whether the search of an automobile without a warrant is valid depends upon whether the search is made upon probable cause, that is, upon a belief reasonably arising out of circumstances known to the officer that the vehicle contains unstamped liquor.'

"In the Carroll case, supra, 267 U.S. at page 149, 45 S.Ct. at page 283, 69 L.Ed. 543, the court said: 'On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid.' See also Brinegar v. United States, 338 U.S. 160, 165, 69 S.Ct. 1302, 93 L.Ed. 1879.

"From our viewpoint the case presents no violation of the Fourth Amendment. Only unreasonable searches are prohibited by that Amendment. United States v. Rabinowitz, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653. The question of whether a search warrant should have been sought is not material."

That the vehicle in the case here was a taxicab, or might have been any other vehicle, either owned or not owned by defendant, does not seem to the court to be material. The test is whether there existed probable cause to believe that it was being used for the transportation of unstamped liquor.

The motion to suppress the evidence will accordingly be denied. Let the appropriate order be prepared.