**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Patrick HENRY and Albert Rudolph**
**Pierotti, Defendants-Appellants.**

**No. 12306.**

United States Court of Appeals
Seventh Circuit.

Oct. 2, 1958.

Rehearing Denied Nov. 4, 1958.

**726**

Edward J. Calihan, Jr., Chicago, Ill., James P. Piragine, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Bernard J. Waters and John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and HASTINGS and PARKINSON, Circuit Judges.

HASTINGS, Circuit Judge.

Appellants, John Patrick Henry and Albert Rudolph Pierotti, were convicted under a one-count indictment charging them with the unlawful possession, in violation of Title 18, U.S.C.A. § 659, of three cartons of radios stolen from an interstate shipment. This appeal is based on alleged errors of the trial court in overruling the motions of both appellants to suppress evidence used in this cause and in its denial of appellant Henry's motion for a judgment of acquittal.

It is appellants' contention that the pre-trial hearing on their motions to suppress established that they were the victims of an unlawful arrest and search without warrant by agents of the Federal Bureau of Investigation and that, consequently, the evidence uncovered in the search, the three cartons of radios, should properly have been suppressed.

George Stadtmiller, one of the two Federal agents who arrested appellants, was the only witness called by appellants in support of their motions to suppress and was, indeed, the sole witness in the pre-trial hearing on the motions. From his testimony are found the following facts: Agent Stadtmiller and Agent John J. Oitszinger who accompanied him were, on the day of the arrest, May 14, 1957, investigating leads to a reported theft of whiskey from the Hayes Freight Lines located in Chicago, Illinois, which had occurred the night before. Stadtmiller indicated that he was acquainted with both appellants, (although he was not asked to explain in what connection he knew them) and also testified that he had received information concerning the "*implication* of defendant Pierotti with interstate shipments," this information purportedly coming from a Mr. Lieberman, vice president of the Ziffrin Truck Lines and employer of Pierotti. There is no indication in the record in what manner Pierotti was so implicated.

Appellants were first observed by the agents, on the day of the arrest, emerging from the Red Top Lounge located at 2903 South Wallace Street, Chicago, Illinois, at about 2:10 p. m. They then walked to a 1953 two-door black and white Ford parked across the street and, with Pierotti driving, were observed to travel by a rather indirect route to an alley between Union and Lowe streets. The agents, who had followed, parked their car, walked to the end of the alley and observed Henry leave the car occupied by appellants and enter a gangway. Henry returned in about two minutes carrying some cartons which he placed in the car. Appellants drove off and were lost to the view of the agents. The agents then returned to their car and drove through various streets looking for appellants' car which they finally located parked in its original position opposite the Red Top Lounge on Wallace Street. The agents parked nearby and shortly thereafter observed Henry and Pierotti leave the Lounge. After engaging in conversation with a man known to the agents as Steve Bedlow, appellants returned to their car and drove

back to the same alley where Henry was again observed getting out of the car, entering the gangway and returning shortly carrying some more cartons which he again placed in the car. The agents saw all this at a distance of some 300 feet and could not have known at that time the contents of the cartons, their number or size. Appellants then drove away, followed by the agents, and a few minutes later at about 2:50 p. m. were intercepted by the agents who motioned them to stop as the two cars approached each other traveling along Wallace Street. Henry got out of the car leaving the car door open and approached the agents. He was overheard to say to Pierotti: "Hold it. It's the G's," and "Tell him he [you?] just picked me up." The three cartons bearing shipping labels which indicated they were part of an interstate shipment *were plainly visible to Agent Stadtmiller through the open door of the car.*

Stadtmiller testified further that:

"* * * We asked them about the ownership of the car, and Mr. Pierotti said it wasn't his car, and he said it was Babe's car, and that he had borrowed it. And we asked him about the cartons that were in the car, and he said that they were in the car when he——

"The Court: Just a minute. All right, go ahead.

"By the Witness:

"A. (Continuing) We asked him about the cartons that were in the car, and he said that they were in the car at the time he borrowed it from the owner.

\*     \*     \*     \*     \*     \*

"Q. What, if anything, else was said by you to the defendants and by the defendants to you at that time and place? A. Well, after they said, after Mr. Pierotti said the cartons were in the car at the time he borrowed it, we asked them if they had just been at the Red Top Lounge, and Mr. Henry said that he may have been earlier that day as he was visiting numerous taverns. Mr. Pierotti said he had just got off work at 2:30.

"Q. Do you know of your own knowledge whether or not that was correct? A. Well, I had seen him at 2:10 away from work."

Appellants were then taken into custody. It was ultimately determined, between 4:30 and 5:00 p. m. of that day, that the cartons in question had been stolen from a motor truck of the Ziffrin Truck Lines, and appellants were then *officially informed* that they were under arrest and of the charges against them.

■ Appellants raise the contention that the stopping of their car and resulting discovery of the cartons of radios plainly visible through the open door of the car was an unlawful search. Under the Fourth Amendment to the Constitution a lawful search of a car moving on a public thoroughfare may be had without a warrant providing probable cause for the search exists. Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

The Supreme Court of the United States in the Carroll case observed that:

"On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The Fourth Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens.

\*     \*     \*     \*     \*     \*

" 'The search for and seizure of stolen or forfeited goods, or goods liable to duties and concealed to

avoid the payment thereof, are totally different things from a search for and seizure of a man's private books and papers for the purpose of obtaining information therein contained, or of using them as evidence against him. The two things differ *toto coelo*. In the one case, the government is entitled to the possession of the property; in the other it is not. The seizure of stolen goods is authorized by the common law * * *.' " Carroll v. United States, supra, 267 U.S. at pages 149–150, 45 S.Ct. at page 283.

In the Brinegar case the Supreme Court stated that probable cause "has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, supra, 338 U.S. at pages 175–176, 69 S.Ct. at page 1310.

This court has defined probable cause as "reasonable grounds of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the party is guilty of the offense with which he is charged. * * * [A]nd what constitutes probable cause must be determined from the standpoint of the officer with his skill and knowledge, rather than from the standpoint of the average citizen under similar circumstances." United States v. Sebo, 7 Cir., 1939, 101 F.2d 889, 890. The agent need not have legal evidence of a suspected illegal act. Brinegar v. United States, supra, 338 U.S. at pages 174–175, 69 S.Ct. 1302; Gilliam v. United States, 6 Cir., 1951, 189 F.2d 321, 323. It is only necessary that the facts and attendant circumstances are such as would lead a reasonably prudent man to believe that articles are illegally possessed in the automobile to be searched. Husty v. United States, 1931,

282 U.S. 694, 701, 51 S.Ct. 240, 75 L.Ed. 629.

■ We hold that there existed probable cause for the search in this case. The agents, while investigating for leads to a reported theft of whiskey which had occurred the previous night, observed appellants' unusual behavior set forth above. Both appellants were known to the agents, and appellant Pierotti known by them to be involved or implicated in interstate shipments in some manner. As in the Brinegar and Carroll cases, no problem of search of a home or other place of privacy is involved. These cases involve the freedom to use public thoroughfares in swiftly moving vehicles for dealing in contraband. Not every traveler may be stopped and searched at an officer's whim or mere suspicion, but it is clear that here the facts within the agents' knowledge amounted to more than mere suspicion and constituted probable cause for their action in stopping appellants' car.

The arrest and taking into custody of appellants followed the discovery of the cartons of radios bearing the shipping labels indicating that they were part of an interstate shipment and the far from satisfactory explanation by appellants in regard to the ownership of the cartons. Agents of the Federal Bureau of Investigation are empowered by statute to "make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have *reasonable grounds to believe that the person to be arrested has committed or is committing such felony*." (Our emphasis.) 18 U.S. C.A. § 3052. The agents on finding the cartons of radios in the car had reasonable ground to believe that the felony of illegal possession of goods stolen from an interstate shipment was then being committed and the arrest was therefore valid. See Bell v. United States, 1958, 102 U.S.App.D.C. 383, 254 F.2d 82; Walker v. United States, 7 Cir., 1957, 246 F.2d 518; and Gilliam v. United States,

6 Cir., 1951, 189 F.2d 321. The fact that there had been no reported theft of radios from an interstate shipment cannot be seriously considered as an indication that the agents acted without "reasonable grounds." An arresting officer deals in probabilities, not certainties and not necessarily eventual truth. Brinegar v. United States, supra, 338 U.S. at page 176, 69 S.Ct. 1302; Bell v. United States, supra, 254 F.2d at page 86. The trial court properly denied appellants' motion to suppress.

Appellant Henry contends further that, as a matter of law, the evidence was not of sufficient weight to support a conviction as to him and that, therefore, the trial court erred in denying his motion for judgment of acquittal. In considering appellant's contention in this regard this court may not weigh the evidence nor determine the guilt or innocence of the accused and must view the record in the light most favorable to the government. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Green v. United States, 7 Cir., 1957, 246 F.2d 155, 157; United States v. Iacullo, 7 Cir., 1955, 226 F.2d 788, 795. If, as appellant Henry contends, the government's case had been based solely on the fact of his presence in the car which contained the stolen goods and his association with the other defendant, the government would have failed to prove unlawful and knowing possession on his part. United States v. O'Brien, 7 Cir., 1949, 174 F.2d 341, 344. However, in this case the record shows further that the car in which appellants were driving had been borrowed by Henry from one Wilbur Holtz who denied the presence of the cartons in his car at the time Henry took the vehicle. At the time they were stopped and questioned Pierotti untruthfully asserted that the car had been loaned to him. Agent Oitszinger testified of his observations of appellants' conduct set forth elsewhere in this opinion which shows clearly that Henry exercised dominion over the cartons completely inconsistent with the attempted explanation at the time of his arrest that the cartons were in the car when he got into it and that he did not know whom they belonged to. This court held in Wilkerson v. United States, 7 Cir., 1930, 41 F.2d 654, 657 that:

"Possession of the fruits of crime recently after its commission justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence."

We hold that the evidence supports the conviction of Henry and that the trial court did not err in denying his motion for judgment of acquittal.

The judgment of the district court is

Affirmed.

PARKINSON, Circuit Judge (dissenting).

In order to sustain the judgment of conviction in this case the Government is obliged to justify the search as being incident to a lawful arrest. This it cannot do and I am, therefore, compelled to dissent.

On the day of the arrest federal agents were investigating leads to a whiskey loss from the Hayes Freight Lines which had occurred the night before. Agents Stadtmiller and Oitszinger were in a car so engaged. The defendants "were driving south in the 2600 block on Wallace, and we [the agents] were headed north, and we [the agents] intercepted their path." The agents "drove directly in front of" the car in which the defendants were riding and made "a head-on stop".

Counsel for the Government stated in oral argument before this court that when the federal agents stopped the defendants' car the arrest of the defendants occurred right then and there. Thus it is clear that unless the agents had probable cause to *then* believe that the defendants had committed a felony cognizable under the laws of the United States that arrest was not a valid one and any search incident thereto was unlawful. The search at its commence-

ment must be valid and cannot be saved by what it turns up. "In law it is good or bad when it starts and does not change character from its success." United States v. Di Re, 1948, 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210.

The parties are in agreement that probable cause means more than bare suspicion. The Government's contention that there was probable cause to arrest the defendants when the federal agents stopped defendants' car is based solely upon three factors: 1, the defendants were seen carrying cartons, the number, size and contents of which were completely unknown to the agents, which the defendants placed in the back of their automobile; 2, the agents were "acquainted" with the defendants; and 3, a Mr. Lieberman, vice-president of Ziffrin Truck Lines, for which the defendant Pierotti worked, had told Agent Stadtmiller that Pierotti had been "implicated" with interstate shipments.

Again in oral argument before this court the Government admitted that it could not explain what had been meant by the words "acquainted" and "implicated". It has not been argued, nor from this record could it be so argued, that any connotation unfavorable to defendants must or should be placed upon these words. They stand alone unexplained and undefined and as such they are meaningless. They cannot be twisted and contorted into personal knowledge by the agents that the defendants were criminals or were known to be involved in federal law violations as were the defendants in the Carroll and Brinegar cases.

Not only were the agents unable to tell anything about the cartons prior to the arrest but on subsequent examination it was shown that whereas the agents were looking for and expected to find stolen whiskey the cartons contained no such thing. Moreover, after the agents had opened the cartons and examined the contents they were unable to say what crime, if in fact any at all, had been committed.

In the Walker case the evidence clearly showed that the arresting federal agents had personal knowledge given to them by an informer which furnished probable cause to believe a federal felony was being committed. Thus this court held the arrest was valid and the search incidental thereto lawful. Likewise in the Gilliam case the federal agents had personal knowledge that the defendant was a bootlegger and they had been furnished with information by an officer that clearly constituted probable cause. It is that sort of direct evidence of personal knowledge that is completely lacking in the case at bar.

The Bell case has no application here. There the arresting officers were policemen of the District of Columbia. They stopped the defendant's car after he had pulled away from the curb and had driven some two blocks without lights at 3:30 o'clock in the morning. The officers could have properly arrested the defendant for driving without lights.

Apart from the fact that the record in the Carroll, Husty and Brinegar cases clearly disclosed evidence of personal knowledge of the arresting federal agents that each defendant was a bootlegger and engaged in illegal trafficking of liquor in violation of The National Prohibition Act and thereby had probable cause sufficient to search their respective automobiles, Mr. Justice Jackson speaking for the court in U. S. v. Di Re, 1948, 332 U.S. 581, on page 584, 68 S.Ct. on page 223, points up the clear distinction between such cases and the one here when he speaks as follows:

"The belief that an automobile is more vulnerable to search without warrant than is other property has its source in the decision of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. That search was made and its validity was upheld under the search and seizure provisions enacted for enforcement of the National Prohibition Act and of that Act alone."

Again we say there is no evidence of personal knowledge by the federal agents

here that the defendants or either of them could have been suspected of interstate shipment thefts at the time the path of their car was intercepted by the agents and they were arrested and taken into custody. It was at that time probable cause had to exist for when their car was stopped by the agents intercepting its path and driving directly in front of them and making a head-on stop I think the arresting officers were then in the position of an officer who has entered a home; i. e., the search at that time had to be valid and could not be saved by what it later uncovered.

In my opinion the search of defendants' automobile was in clear violation of the Fourth Amendment. I would, therefore, reverse and remand with instructions to sustain the motions to suppress.